ENSERCH CORPORATION, Appellant

v.

HOUSTON OIL & MINERALS CORPORATION, Appellee.

No. 01–86–0240–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1987.

as, Tenneco Oil Co., Houston, for Houston Oil.

Before LEVY, DUGGAN and HOYT, JJ.

LEVY, Justice.

The issue presented here is whether the trial judge correctly determined that the price term in the parties' gas purchase contract provides for the buyer's payment of severance taxes and the buyer's payment of monthly escalations allowed under the Natural Gas Policy Act ["NGPA"]. We hold that, under the particular facts of this case, the trial judge was correct in concluding that the buyer, Lone Star, a division of Enserch Corporation, was contractually responsible for payment of the monthly NGPA price, but incorrect in concluding that Enserch was contractually obligated for payment of severance taxes. Consequently, we affirm in part and reverse and render in part.

Houston Oil & Minerals Corporation ("H.O. & M.") sued Enserch for money allegedly due under a 20-year natural gas purchase contract entered into on August 1, 1976. The parties' contract contained two disputed clauses: one clause imposed payment for severance taxes on the seller, H.O. & M., and the other clause, entitled "Redetermination Clause," allowed the parties to adjust the purchase price on a periodic basis. Pursuant to the "Redetermination Clause," the parties were to calculate the redetermined price by using prices contained in two recent, similar, intra-state gas purchase contracts "having the highest unit prices eligible for payment in the surrounding area." These prices were to be adjusted to reflect "terms and conditions such as quality, pressure, gathering, and compression obligations ... substantially like those provided ..." in the parties' contract. After ascertaining the current adjusted prices, the parties were to average them to arrive at the redetermined price.

On November 9, 1978, Congress enacted the NGPA, 15 U.S.C. sections 3301 et seq. (1976 Supp.1981), which established a new regulatory agency that extended federal price controls for the first time to gas sold

Alfred H. Ebert, Jr., Lawrence L. Bellatti, Andrews & Kurth (Richard T. Boone, Gregg C. Laswell, of counsel), Andrews & Kurth, Houston, for Enserch.

Lloyd R. Cunningham, Reynolds, Allen & Cook, Robert M. Craig, III, John S. Mathi-

under existing intra-state contracts such as the one in question. The NGPA established a price ceiling on natural gas that escalated each month, and the ceiling price eventually became the maximum lawful price allowed under the parties' contract.

On November 12, 1979, H.O. & M. gave notice of its intent to redetermine the contract price effective February 1, 1980, by adopting the price term of two recent contracts. The price paid under the contracts was the prevailing market price, which included an amount for the reimbursement of severance taxes and an amount derived using a pricing formula based on section 102 of the NGPA. In 1980 and for each subsequent year in dispute, Enserch refused to pay a redetermined price based on the price prevailing in the market. Instead, each month of the contract year, Enserch paid to H.O. & M. the section 102 price of the NGPA in effect on February 1 of that contract year. Therefore, the parties dispute whether the amount of their contract price encompasses the monthly escalations and state severance taxes that constitute the prevailing market price. Appellee argues that their contract price includes every component of the market price because their contract price is derived from the price of other contracts entered into in the intra-state market and these contracts include a price term that is the prevailing market price.

On October 17, 1980, H.O. & M. filed its original petition in the trial court seeking a declaratory judgment that its construction of the redetermination claim was correct and seeking damages for Enserch's failure to pay the price it considered appropriate. The trial court awarded H.O. & M. a partial summary judgment and denied a summary judgment sought by Enserch, whereby H.O. & M. recovered $4,393,993.95, together with interest and attorney's fees. The trial judge's order resolved all issues in the case except for H.O. & M.'s application for attorney's fees.[1]

Enserch's points of error one and two assert that the trial court erred in denying its motion for summary judgment and in granting summary judgment for H.O. & M.

█ It is undisputed that the parties agreed to be bound by a market price negotiated independently by third parties and incorporated into the parties' contract via the redetermination clause. This clause determined the price value of the parties' contract by referring to the "highest unit prices eligible for payment." Therefore, the price value of the referenced contracts should become the amount adopted by the parties' agreement, unless receipt of the total amount is prohibited by law. The law allows contract provisions for price escalations as long as the escalations are agreed to by the parties in the contract. *Pennzoil Co. v. Federal Energy Regulatory Commission*, 645 F.2d 360, 374–375 (5th Cir. 1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). Likewise, the FERC, in implementing the NAPA, allows reimbursement for severance taxes if contractually authorized.[2] Order No. 108–A, Docket Nos. 80–21–000, 80–21–001, 48 Fed. Reg. 48223, III FERC Stat. and Regs. [Preambles], Paragraphs 30, 507 (1983) *on reh'g*, Order No. 108–B, Docket Nos. 80–21–000, and 80–21–008 (1984). Therefore, this Court must determine whether the parties' contract allowed either price fluctuations or reimbursement for state severance taxes.

█ We find that the parties' contract allows H.O. & M. to recover the NGPA ceiling price because a price that fluctuates in compliance with a maximum lawful price under the NGPA is neither prohibited nor inconsistent with the express terms of the parties' contract. The terms the parties use are to be given their plain, ordinary, and generally accepted meaning unless the contract itself shows that the words are used in a different sense. *Stahl Petrole-*

---

1. H.O. & M. voluntarily dismissed its remaining claims.

2. The Federal Energy Regulatory Commission ("FERC") has authority to issue, prescribe, amend, and rescind rules and orders to carry out its functions under the NGPA. 15 U.S.C. sec. 3411(a). The FERC has consistently held that severance tax reimbursement must be authorized by the contract between seller and buyer.

*um Co. v. Phillips Petroleum Co.,* 550 S.W.2d 360, 366 (Tex.Civ.App.—Amarillo 1977), *aff'd,* 569 S.W.2d 480 (Tex.1978). The contract expresses the parties' intent to be bound by a market price value determined by third parties because it specifically provides for a redetermination of prices from the "highest unit prices eligible for payment." The fact that price is expressed as a "unit price" in the parties' contract reflects merely market terminology at the time of contract formation, and does not demonstrate the parties' intent to be bound by a non-fluctuating price value. To the contrary, the parties expressly agreed to be bound by a market price value determined by third parties, a price value that today is fluctuating and is expressed by federal regulations.

However, we hold that the contract precludes H.O. & M. from recovering any amount that is attributable to severance taxes. Enserch's payment of severance taxes is inconsistent with the express terms of the contract, which is to be construed so as to give effect to each and every provision. *Palmer v. Liles,* 677 S.W.2d 661, 665 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In the parties' contract, two clauses deal with the payment of severance taxes. The first is the "redetermination" clause, which *allows* payment of severance taxes by the buyer if the contract does not prohibit such payment. The second clause, Article XV of the contract, specifically *imposes* payment for severance taxes on the seller, H.O. & M. Article XV provides that: "[S]eller agrees to pay or cause to be paid all taxes and assessments lawfully levied and imposed upon seller as a result of its sale of the gas delivered hereunder prior to delivery and purchased by the buyer...." It is settled law that in resolving contractual disputes, courts must give full effect to particular clauses over more general clauses. *Hatcher v. Weatherall,* 551 S.W.2d 179, 182 (Tex.Civ.App.—Texarkana 1977, no writ); *Parker v. Delcoure,* 455 S.W.2d 339, 344 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.). Accordingly, Article XV of the parties' contract is more particular than the redetermination clause and, therefore, we conclude that Ar-

ticle XV controls the payment of severance taxes. We hold that H.O. & M.'s specific assumption of these taxes under article XV cannot be transferred to Enserch via the general redetermination clause.

In addition, we find the reasoning of *Moncrief v. St. Regis Corp.,* No. TCA 85–7023–WS (N.D.Fla., August 13, 1985), to be persuasive. In *Moncrief,* the court had to determine whether the contract between St. Regis and Moncrief allowed reimbursement for state severance taxes. The language of the Moncrief contract stated, "Sellers shall pay or cause to be paid all severance, production, gathering or similar taxes levied in respect of or applicable to gas tendered to delivery hereunder...." The court found that

> (t)he plain language ... (of the Moncrief contract) ... places the responsibility for payment of severance taxes on the [seller]. Nowhere in the contract is there a requirement that the [buyer] reimburse the [seller]. That the parties considered the buyer's responsibility for reimbursement of severance taxes is demonstrated by further reference to the [contract's language] where it is made clear that the buyer would be responsible to reimburse the seller for any increase in the severance tax rate above the rate levied on the date of the contract.

*Id.* at 6.

Based on the above language, the court found that the Moncrief contract did not authorize reimbursement.

The language of the contract in the instant case is similar to the language of the Moncrief contract. The parties state in their contract that the "seller agrees to pay or cause to be paid all taxes" and that the "buyer agrees to pay seller, by way of reimbursement, a sum sufficient to cover one hundred percent of such new, additional or increased taxes paid ... by seller." It is thus clear that the contract's plain language imposes the responsibility for payment of severance taxes on the seller, H.O. & M, and does not authorize or require Enserch to pay severance taxes unless new, additional, or increased taxes are

levied, and then only to that extent. To be allowed by law, reimbursement for state severance taxes must be authorized by contract between the seller and buyer. *See,* Sec. 110 of the NGPA, 15 U.S.C. sec. 3320; Order No. 108–A, 48 Fed.Reg. at 48228 (1983). Because the parties' contract controls the disposition of this case, H.O. & M. is contractually (and thus legally) prohibited from recovery of any amount attributable to severance taxes at or below the rate levied on the date of the contract.

We do not reach the parties' arguments offered pursuant to the "notice" provisions of their contract because we have held that H.O. & M. is contractually prohibited from recovery of any amount attributable to severance taxes that is not "new, additional, or increased taxes paid ... by seller." H.O. & M. may not give Enserch "notice" of its intent to claim any amount prohibited by their contract.

Enserch's points of error are sustained in part and overruled in part. The trial court's judgment in favor of H.O. & M. is reformed to the extent that Enserch is not required to pay H.O. & M.'s severance taxes and, as reformed, is affirmed.

The judgment is affirmed in part and reversed and rendered in part.