**HOUSTON OIL & MINERALS
CORPORATION, et al.,
Appellants,**

**v.**

**ENSERCH CORPORATION, Appellee.**

**No. B14–85–965–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 11, 1987.

Rehearing Denied July 9, 1987.

Lloyd R. Cunningham, Lisa Mims, Houston, for appellants.

Jim Mattox, Jose Manuel Rangel, Austin, Alfred H. Ebert, Jr., Lawrence L. Bellatti, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION ON MOTION FOR REHEARING

SEARS, Justice.

On Appellee's Motion for Rehearing, the original opinion is withdrawn and we substitute the following opinion.

This is an appeal from the granting of Appellee's Motion for Summary Judgment and the overruling of Appellant's Motion for Partial Summary Judgment. We reverse the granting of Appellee's Motion for Summary Judgment, affirm the denial of Appellant's Motion for Partial Summary Judgment and remand the cause to the trial court.

At issue in this case is the construction of a contract for the sale and purchase of natural gas. Although both parties contend that a disputed provision of the contract is unambiguous, they disagree as to the "clear meaning" of that provision. The provision in question is known as the FPC clause.

In March 1973, Appellant, Houston Oil and Minerals Corporation ("HO & M" or "Seller") and Appellee, Lone Star Gas Company, now a division of Enserch Corporation, ("Lone Star" or "Buyer"), entered into a twenty-year contract for the purchase and sale of natural gas produced by HO & M. The General Land Office of the State of Texas is a one-sixth royalty interest owner and as such intervened in the lawsuit and joined HO & M as an appellant.

At the time the contract was executed there were two distinctly different markets for gas produced in Texas: the interstate and the intrastate markets. The price of Texas gas transported outside the State of Texas was regulated by the Federal Power Commission ("FPC") while gas sold in the intrastate market was not. Intrastate gas sold at a price considerably higher than that allowed in the regulated interstate market.

The basic caveat upon which the contract was executed was that the gas would not be sold interstate. Uncontested contract provisions clearly assert HO & M's determination to keep the gas outside the scope of federal regulation, to wit:

> Buyer represents to Seller ... that none of the gas received from Seller hereunder will be transported or sold for resale outside the State of Texas.
>
> ... [I]n the event of ... action by Buyer that would cause this sale to become an interstate sale then this contract shall at the election of Seller, terminate as of two (2) hours preceding the time on which Buyer's acts ... occurred.

HO & M and Lone Star anticipated the possibility that federal jurisdiction could attach to gas sold under the contract as a result of circumstances outside the control of Buyer or Seller. In consideration of such an occurrence, the FPC clause provided:

> In the event the Federal Power Commission or successor governmental authority subjects the gas covered under the contract to the jurisdiction of such authority, Seller reserves the right to a redetermination of the price payable hereunder and such provisions hereof as affect price to insure receipt by Seller of the maximum price provided herein consistent with applicable laws, orders, rules and regulations.

Other contract provisions important to this appeal are Article XI and XV. Article XI of the contract established the price of gas on the date of the first delivery and provided for an automatic annual escalation of one cent per million British Thermal Units ("MMBtu"). Paragraph 2 of that article, the "redetermination clause," further provided that at Seller's option, the sales price could be redetermined at two-year intervals. The biannually redeter-

mined price was to be the average of the two highest unit prices being paid at the time of redetermination for the purchase of gas in Texas Railroad Commission Districts 2, 3 and 4. Article XV dealt with payment of taxes and provided: "Seller agrees to pay or cause to be paid all taxes and assessments lawfully levied and imposed upon Seller....", and, "Buyer agrees to pay or cause to be paid all taxes and assessments lawfully levied and imposed upon Buyer...."

As anticipated by the parties, intrastate gas was federally regulated on December 1, 1978, by the enactment of the Natural Gas Policy Act of 1978 ("NGPA"). By letter dated April 2, 1979, HO & M notified Lone Star that it was exercising its rights under the FPC clause to redetermine the "contract price" and the "contract provisions affecting price." HO & M offered the gas at the maximum lawful price under § 105(b)(2) of the NGPA (the contract price of $2.11 per MMBtu), escalated each month by inflation as provided by that statute, plus reimbursement for severance taxes. Lone Star responded that the provisions of the FPC clause had not been triggered and continued to accept the gas but refused to pay any amount above the then current contract price ($2.11 per MMBtu).

Lone Star's refusal to discuss amendments to the contract price and the provisions affecting price, i.e. escalation and severance tax reimbursement, is based on its interpretation of the language of the FPC clause regarding "maximum price provided herein." Lone Star contends that the extraordinary redetermination contemplated under the FPC clause was merely a "one-time contingent adjustment to accomplish a stated purpose." It contends that "maximum price provided herein" refers only to $2.11 which was the unit contract price on the date federal regulation attached. Lone Star further contends the provision existed solely to insure that if federal regulation prevented HO & M from getting its "contract" price per unit *on that date*, i.e. date of federal intervention, then HO & M had the right to a redetermination of price related provisions in order to receive a maximum of $2.11 per MMBtu.

While the NGPA did not prevent HO & M from receiving $2.11 per MMBtu on December 1, 1978, it did cause other buyers and sellers in the Gulf Coast area to change the pricing structure of their gas contracts. Thus, at the time of biannual redetermination, the two contracts having the highest prices in the designated market area had basic unit prices *and* provisions for: (1) monthly escalations, and, (2) severance tax reimbursement. However, according to Lone Star's view of the contract, the exercise of the redetermination clause allowed HO & M to receive only a price equal to the other contracts' *unit* price. Since the unit price was the same, Lone Star contends there was nothing to "redetermine." Lone Star points out that the redetermination clause does not allow an amendment of the escalation clause nor provide for reimbursement of taxes. It argues that the FPC clause was the sole provision in the contract which created the right to amend "other provisions affecting price", and that the condition precedent to trigger the FPC clause never occurred. Lone Star then concludes that HO & M was not entitled to a redetermination unless federal regulation resulted in *immediate harm* to HO & M, and that there was no harm since HO & M still received $2.11 per MMBtu after federal regulation on December 1, 1979.

HO & M and the State of Texas contend that federal regulation is the sole condition precedent to the triggering of redetermination of "price" and "provisions affecting price" under the FPC clause. They interpret "maximum price provided herein" to mean unit price *and* all other conditions affecting price. Therefore, both the monthly escalation *and* the severance tax reimbursement provisions included in the current natural gas contracts of other sellers should be available to HO & M.

The FPC clause provided that under federal control an entirely new price structure would be required for the remaining term of the contract. It expressly provided for redetermination of; (1) price *and* (2) provisions affecting price. The provisions for monthly escalation and for reimbursement

of severance taxes found in the contracts of other sellers obviously "affect price" and, therefore, could be provisions anticipated by the parties in drafting the FPC clause.

Appellees argue in their Motion for Rehearing that this court's opinion would totally deprive them of their right to "renegotiate" price after federal regulation. We find no language in the FPC clause or the redetermination clause that gave Appellees a right to "renegotiate". In the event of federal regulation, the price and conditions affecting price were to be *redetermined*, not *renegotiated*.

■ Whether or not the FPC clause provided for such a redetermination to include monthly escalation and/or refund of severance taxes is a fact question to be determined by a jury. Appellees are incorrect in their interpretation of the contract and they are incorrect in their belief that nothing occurred to trigger the provisions of the FPC clause. The FPC clause expressly provides that seller has a right to "redetermine" in the event of federal regulation of the gas sold pursuant to the contract. There is no question that the gas sold was federally regulated. No other condition precedent was required for seller to exercise its rights pursuant to the FPC clause. The only question is, what provisions affect the price so as to provide seller the maximum price provided by the contract. Again, this is a question of fact to be resolved by the trier of fact.

HO & M sought a declaratory judgment from the district court to construe the FPC clause and to award HO & M the maximum price it could have received had the price and provisions affecting price been redetermined effective December 1, 1978. Subsequently, HO & M filed its Motion for "Partial" Summary Judgment, joined by Intervenor, seeking an amount equal to the difference between the reasonable price of the gas sold and the price actually paid by Lone Star, plus interest and attorneys' fees, through November 5, 1983. Reasonable price was defined by HO & M to be equal to the maximum lawful price permitted under § 105(b)(2) of the NGPA plus all

monthly escalations and reimbursement of severance taxes. HO & M calculated that $19,948,920.00 was due under the escalation clause and $21,696,548.00 due for refund of severance taxes.

HO & M and the State of Texas bring three points of error. In point one they contend the trial court erred in granting Lone Star's cross-motion for summary judgment as the evidence established as a matter of law that HO & M had a right to renegotiate the price pursuant to the FPC clause of the contract.

■ When we are dealing with summary judgment evidence, the presumptions and burdens of proof applicable to a conventional trial are set aside. A defendant must present evidence to show that no genuine material fact issue exists in plaintiff's cause of action *as a matter of law*. *Nixon v. Mr. Property Management Company Inc.*, 690 S.W.2d 546, 548 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). In fact, the movant has the burden to prove all of the elements of the cause of action, or the defense, as a matter of law.

Viewing the summary judgment evidence as we must, and drawing all reasonable inferences therefrom in favor of appellants, we conclude that the parties did intend to redetermine the contract price *and* the provisions affecting price in the event the gas became subject to federal regulation. We hold that the trial court erred in granting Lone Star's Motion for Summary Judgment. Point of error one is sustained.

In their second point of error, Appellants contend the trial court erred in denying HO & M's Motion for "Partial" Summary Judgment. HO & M requested summary judgment and a determination that the price payable for gas under the contract was equal to the maximum lawful price under the NGPA, plus all monthly escalations and reimbursement of severance taxes. HO & M sought recovery of damages in the amount of $41,645,467, plus prejudgment interest and attorneys' fees.

■ While the motion for summary judgment has been labeled *partial* by Lone

Star, as not disposing of all issues, and therefore not proper as summary judgment, HO & M contends it is *partial* only as to the monies to be received because damages were limited to those occurring prior to November 5, 1983. HO & M contends it can still sue for damages incurred after that date, and therefore the judgment is not interlocutory. We find we do not have to rule on whether the judgment requested was partial or interlocutory. We find a material fact issue exists as to what constitutes "maximum price provided herein" and "provisions hereof as affect price." We hold the trial court did not err in overruling HO & M's motion for summary judgment. Point of error two is overruled. Because we have sustained point of error one, we need not reach the issues raised in point of error number three.

The judgment of the trial court granting the summary judgment of Lone Star is reversed and this cause is remanded to the trial court.