H.S. "Gus" EDWARDS, et al.,
Appellants,

v.

LONE STAR GAS COMPANY, A DIVISION OF ENSERCH CORPORATION, Appellee.

No. 07–88–0024–CV.

Court of Appeals of Texas,
Amarillo.

Dec. 30, 1988.

Rehearing Denied March 1, 1989.

F. Hastings Pannill, Sr., William Pannill, Katherine L. Butler, Elizabeth N. Jones, and Joseph W. Pueschner, Houston, for appellants.

Andrews & Kurth, Richard T. Boone, Gregg C. Laswell, Alfred H. Ebert, Jr. and Lawrence L. Bellatti, Houston, Clint Adams, Enserch Corp., Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

This appeal involves a controversy over amounts payable after redetermination of contract prices due under two natural gas contracts. It arises from an action filed by H.S. "Gus" Edwards and forty-seven others (herein Edwards) against the Lone Star Gas Company, which is the public utility division of the Enserch Corporation (herein Enserch). After hearing cross motions for summary judgment, the trial court found Edwards was entitled to recover the sum of $1,481,056.16, plus prejudgment interest compounded daily, post-judgment interest until paid, and attorney's fees. Edwards was denied a recovery for reimbursement of severance taxes. From this judgment both parties have perfected an appeal. We reverse and render.

In four points, Edwards asserts the trial court erred in (1) denying them an amount equal to the state severance tax imposed on the natural gas they sold to Enserch because the contract terms adopting the highest price to be paid as of April 1 of each year under other contract terms incorporated those terms by reference into the parties' contracts; (2) denying Edwards a recovery of attorney's fees for the charges of experts and costs; (3) granting Enserch a partial summary judgment; and (4) granting Enserch attorney's fees.

In three points, Enserch says the trial court erred in (1) denying Enserch's motion for summary judgment and granting Edwards' motion for summary judgment by holding that Enserch was required to pay monthly escalations in the redetermined contract price, and (2) compounding the interest on past due amounts under the contracts.

■ In summary judgment cases, the judgment granted should be affirmed only if the record establishes a right thereto as a matter of law and the movant establishes that he is entitled to the judgment by reason of the matter set out in the motion. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *Harrington v. Young Men's Christian Ass'n of Houston*, 452 S.W.2d 423, 424 (Tex.1970). Although denial of a motion for summary judgment is usually not appealable, *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex.1966), appellate review of such denial is available where, as here, both parties have moved for summary judgment and the trial court has granted one motion and denied the other. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958); *Garcia v. City of Lubbock*, 634 S.W.2d 776, 780 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.).

In the action giving rise to this appeal, Edwards alleged that Enserch had breached two written contracts for the sale by Edwards to Enserch of natural gas produced in King and Cottle Counties, Texas. In the suit, Edwards contended Enserch breached the contracts by (1) failing to pay monthly price escalations equal to the increase in the ceiling price provided for in the Natural Gas Policy Act of 1978, 15 U.S.C.A. section 3301 *et seq.* (1982) (the NGPA), as part of a redetermined contract price, and (2) failing to reimburse Edwards

for their state severance tax liability as part of that redetermined contract price.

The dispute in this lawsuit principally involves the pricing and taxing provisions of the two contracts. Article X, Price, of the contracts reads as follows:

1. Payments for all gas purchased hereunder shall be based upon the total heating value of the gas at the point of delivery, and the base price for such gas, which shall be applicable for the first six (6) months following the date of first delivery hereunder, shall be One and 90/100ths ($1.90) Dollars per one million (1,000,000) British thermal units (MMBTU).

2. The base price to be paid by Buyer to Seller for gas delivered and received during the period commencing six (6) months after date of first delivery hereunder shall be increased Two Cents ($.02) per MMBTU and shall be increased by Three Cents ($.03) per MMBTU annually thereafter during the term of this Contract, effective upon the anniversaries of the first escalation date herein specified.

3. Seller may request a redetermination of the price payable hereunder by Seller giving Buyer written notice of Seller's desire for a price redetermination not less than sixty (60) days immediately preceding the end of (i) the first six (6) months after the date of first delivery and (ii) annually thereafter during the term of this Contract. It is agreed that the redetermined price per MMBTU for such gas shall be equal to the highest price per MMBTU to be paid as of the first day of the period for which the redetermination price will be effective by a bona fide intrastate pipeline company for gas produced in Railroad Commission Districts 8 and 8A in the State of Texas, under terms of a contract of at least three (3) year term in effect at the time the redetermined price is to become effective; provided that in no case shall the redetermined price be less than either the highest price per MMBTU theretofore paid under this Contract or the above specified initial base price plus the accumulated price escalations hereinabove specified. Seller shall notify Buy-

er in writing within thirty (30) days after such price has been determined by the parties hereto of its decision either to accept the redetermined price or to retain the price structure then existing under this Contract. In the event Seller should elect to accept the redetermined price, the Buyer shall pay to Seller such redetermined price for all gas purchased and received hereunder until the next price redetermination shall become effective. The failure by Seller to accept a redetermined price shall not prejudice its rights with respect to future price redeterminations hereunder. Buyer shall have the right to refuse payment of the redetermined price, which decision of Buyer shall be made known by written notice to Seller within thirty (30) days after the date Buyer received Seller's notice of acceptance, and thereafter Seller shall have the right at any time within a period of six (6) months following the date of notice of Buyer's decision, as aforesaid, to terminate this Contract by giving Buyer sixty (60) days prior written notice thereof.

Article XIII, Taxes, reads as follows:

1. Seller agrees to pay or cause to be paid all taxes, fees, and assessments imposed upon or with respect to the gas delivered hereunder prior to its delivery to Buyer, and Buyer agrees to pay or cause to be paid all taxes, fees, and assessments imposed upon or with respect to the gas delivered hereunder after its delivery to Buyer.

2. For the purpose of this Article, the term "tax" or "taxes" shall mean any tax, fee, or charge, now or hereafter levied, or assessed by any governmental authority on the right, act, or privilege of production, severance, gathering, sale or delivery of any portion of the gas subject hereto which is based upon the volume, value, or sales price of such gas. Taxes as used herein shall not include income, ad valorem, excess profit, license, capital stock, franchise, gross receipts, or property taxes.

3. Buyer agrees to reimburse Seller for portions of any new or increased

taxes assessed upon or with respect to the gas prior to its delivery to Buyer hereunder, in accordance with the following schedule, so long as such tax is in effect and paid by Seller for the volumes of gas sold and purchased hereunder:

| Assessed Tax Cents per MCF | Portion to be Reimbursed by Buyer |
| --- | --- |
| Up to One–Half Cent | 90% |
| All over One–Half Cent | 90% |

It being understood that any new or increased taxes are those additional taxes imposed on the Seller subsequent to the date of this Contract.

State severance taxes are costs incurred by producers for the right to produce natural gas. Tex.Tax Code Ann. § 201.051 (Vernon 1982).

█ There is no allegation by either party that the contracts are ambiguous. It is established that the construction of an unambiguous contract presents a question of law for the court, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983), and its words must be accorded their plain, ordinary and generally accepted meaning. *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied*, 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). The court will give effect to the intention of the parties as expressed therein, and the instrument alone will be deemed to express the intention of the parties, for it is objective, not subjective, intent that governs. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515, 518 (Tex.1968).

█ Where the contractual language is plain, clear and unambiguous, this Court is not at liberty to revise a contract under the guise of professing to construe it or to make for the parties a contract different from the one they entered into. *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 368 (Tex.Civ.App.—Amarillo 1977) (on motion for rehearing), *aff'd*, *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, the contract is not ambiguous and parol evidence will not be received to create an ambiguity or to give the contract a meaning different from that which its language imparts. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

In *Enserch Corp. v. Houston Oil & Minerals Corp.*, 743 S.W.2d 654 (Tex.App.— Houston [14th Dist.] 1987, writ denied), the Houston Court examined a similar redetermination clause in a gas purchase contract. The redetermination clause provided for calculation of the redetermined price "by using prices contained in two recent, similar, intra-state gas purchase contracts 'having the highest unit prices eligible for payment in the surrounding area.'" *Id.* at 655. After ascertaining the current adjusted prices, the parties were to average them to arrive at the redetermined price. *Id.*

The Houston Court noted the enactment of the Natural Gas Policy Act (NGPA), 15 U.S.C.A. section 3301 *et seq.* (1982), and the establishment of a price ceiling on natural gas that escalated monthly. 743 S.W.2d at 656. After notice of intent to redetermine the contract price, the parties disputed what was the proper amount payable under their contract, *i.e.*, whether it encompassed monthly escalations and state severance taxes. *Id.*

The Court cited the case of *Pennzoil Co. v. Federal Energy Regulatory Com'n*, 645 F.2d 360, 374–75 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982), for the statement that "[t]he law allows contract provisions for price escalation as long as the escalations are agreed to by the parties in the contract." 743 S.W.2d at 656. Reimbursement for severance taxes, likewise, would be allowed "if contractually authorized (citations omitted)." *Id.* With that pronouncement of the law, we agree.

The Court went on to find the parties' contract allowed recovery of the monthly fluctuating price value found in the referred-to contracts. *Id.* at 657. However, nowhere did the Court find the agreement incorporated the specific contract terms of the contracts from which the market price was established.

■ Moreover, the contract at bar specifically allows an "annual" redetermination, definitely determining the time for the escalation of price. That provision was not in the contract before the Houston Court according to our reading of the facts recited by that Court.

Therefore, since we are bound by a strict construction of the contract language, we find that the parties' contracts specifically provided for "annual" redetermination of the payment price, and that the trial court erred by allowing monthly escalations. As stated in the clear language of Article X, paragraph 3, a request for redetermination of the price payable may be made "annually" during the term of the contract. Such price is to be "equal to the highest price per MMBTU to be paid as of the first day of the period for which the redetermined price will be effective" by reference to the therein described contracts of third parties. The instant contracts contain no "incorporation by reference" language, and, therefore, the contracts being unambiguous, and being required to apply a strict construction to those contracts, we find that monthly escalations in the price payable were not provided for in the contracts. Enserch's first and second points are sustained.

■ As to the issue of reimbursement of severance taxes, again we are referred to the Houston Court's case of *Enserch Corp. v. Houston Oil & Minerals Corp.*, 743 S.W.2d at 657, wherein the Court construed two different contract provisions relating to reimbursement or payment of severance taxes. We agree with the Court's analysis of the status of the law, and reference to section 110 of the NGPA, 15 U.S.C.A. section 3320 (1982), that "[t]o be allowed by law reimbursement for state severance taxes must be authorized by contract between buyer and seller." 743 S.W.2d at 658.

By specific provision in article XIII, Taxes, the parties contractually agreed that seller, Edwards, would pay all taxes, including state severance taxes. Buyer, Enserch, agreed to reimburse Edwards for any new or increased taxes assessed according to a specific formula, if such new or increased taxes were imposed *subsequent* to the date of the contract.

Reference to the third party contracts for determination of a market value for the natural gas, as we stated above, did not incorporate the terms of said contracts into the parties' contract. Therefore, whether the third party contracts contained provisions allowing reimbursement to the seller for state severance taxes is not relevant to the case at bar.

Moreover, unlike the facts of the case of *Enserch Corp. v. Houston Oil & Minerals Corp.*, 743 S.W.2d at 657, our contract's redetermination clause does not speak to reimbursement of state severance taxes, and we must rely solely on the clear, unambiguous wording of the contract's taxing provision. It is clear that the contract's plain language imposes the responsibility for payment of severance taxes on Edwards, and does not authorize or require Enserch to pay severance taxes, unless new or increased taxes are levied. Edwards' first point is overruled.

Due to our sustention of Enserch's first and second points, we must overrule appellants Edwards' points two and three. Moreover, our sustention of Enserch's points obviates the necessity for discussion of Enserch's third point.

As to appellants Edwards' point four, insofar as it alleges error by the trial court in granting judgment to Enserch on attorney's fees, Edwards failed to support such point by argument and authorities, and the point is, therefore, waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983).

The trial court's judgment is reversed and judgment here rendered that Edwards et al. take nothing by their suit, whether for an amount allegedly due because of monthly escalations in the contract price payable or for reimbursement for state severance taxes or for attorney's fees sought. Tex.R.App.P. 80(b)(3).

## ON APPELLANT'S MOTION FOR REHEARING AND TO STRIKE APPELLEE'S REPLY TO THAT MOTION

Appellants H.S. "Gus" Edwards, et al. (Edwards) move the Court to withdraw its

opinion and judgment of December 30, 1988, to grant reargument and rehearing, and to render judgment in their behalf. In numerous points of error, appellants claim this Court erred in finding that they were not entitled to monthly price escalations, state severance tax reimbursement or attorney's fees under the terms of the contracts for the sale of natural gas by them to appellee Lone Star Gas Company, a division of Enserch Corporation (Enserch). For the below reasons, we believe our prior holding remains the correct one and, therefore, overrule Edwards' motion for rehearing.

In their first point, Edwards argue this Court erred in finding that the contracts did not provide for monthly escalations. Edwards complain we wrongly interpreted the holding of the Houston Court in *Enserch Corp. v. Houston Oil & Minerals Corp.*, 743 S.W.2d 654 (Tex.App.—Houston [1st Dist.] 1987, writ denied). This Court held the contracts at issue in this case differed from that in the Houston case because the present contracts defined the time for calculating the redetermined price. In fact, the Houston Court specifically recognized that monthly escalations were not "inconsistent with the express terms of the parties' contract." *Id.* at 656. The contracts at bar define the time for calculating the redetermined price as "the highest price per MMBTU to be paid as of the first day of the period for which the redetermination price will be effective...." The Houston case was based on materially different language from the "annual" escalation language in the contracts at bar. That materially different language evidenced a different objective of the parties to that contract, *i.e.*, to be bound by a market price value determined by third parties by reference to two contracts to find the "highest unit prices eligible for payment." *Id.* at 657.

As to Edwards' argument that this Court's holding is inconsistent with *Houston Oil & Minerals v. Enserch Corp.*, 732 S.W.2d 419 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), we find that case inapposite. That case did not involve the construction of a price redetermination provision, but, rather, a contract provision that provided for a one-time adjustment to the parties' contract in the event the Federal Power Commission asserted jurisdiction to regulate the price at which the gas subject to the contract could be sold. Those facts are not analogous to those at bar. Edwards' first point on rehearing is overruled.

In their second point, Edwards again complain that Enserch should be held responsible for reimbursement to Edwards for state severance taxes. Based on a theory of "incorporation by reference," Edwards again contend that the present contracts' language "referred to" the terms of other contracts and thereby incorporated all terms of those referenced contracts by implication.

Again, we stress the importance of looking to the contract for plain, clear and unambiguous language so that the contract may be given a certain or definite legal meaning or interpretation. *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 368 (Tex.Civ.App.—Amarillo 1977) (on motion for rehearing), *aff'd, Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). Any obligation to reimburse state severance taxes is lawful only to the extent permitted by the parties' contract, *Enserch Corp. v. Houston Oil & Minerals Corp.*, 743 S.W.2d at 658, and by specific provision in article XIII, Taxes, the parties in this case contractually agreed that seller, Edwards, would pay all taxes, including state severance taxes. Reference to the third party contracts for determination of a market value did not incorporate the terms of said contracts into the parties' contracts. Edwards' second point on rehearing is overruled.

In points three and five, Edwards argue this Court applied erroneous rules of contract construction. Edwards contend this Court did not consider their evidence of commercial and regulatory circumstances, did not give effect to all the relevant contract provisions or to course of performance evidence and, finally, that our construction of the contracts is inconsistent

with federal and constitutional law and is incorrectly based on public policy grounds.

Contracts that can be given a definite legal meaning by construing the language used by the parties will not be rendered ambiguous or be subject to change on the basis of parol evidence. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). The contract at bar specifically allows an "annual" redetermination, definitely determining the time for the escalation of price. The instant contracts contain no "incorporation by reference" language, and in fact, specifically provide that reference is made to third parties' contracts to establish "the highest price per MMBTU to be paid as of the first day of the period for which the redetermined price will be effective."

We remain convinced, and the parties continue to agree, that the contracts are unambiguous. Therefore, we continue to believe that a strict construction of those terms is the appropriate application. Edwards' third and fifth points on motion for rehearing are overruled.

In their sixth point, Edwards argue this Court erred by failing to consider the "extensive argument and authorities [they] presented to complain of the trial court's partial award of attorney's fees and expenses." Due to our determination that Edwards take nothing in this case, the question of whether the trial court erred in failing to correctly determine questions of attorney's fees is moot. *See Mollinedo v. Texas Employment Com'n*, 662 S.W.2d 732, 738 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Grant v. Grant*, 358 S.W.2d 147 (Tex.Civ.App.—Waco 1962, no writ). Edwards' sixth point is overruled.

In its fourth point on motion for rehearing, Edwards argue this Court erred in rendering judgment for Enserch on prices paid from and after April 1, 1984. Edwards acknowledge that the trial court "never found it necessary to rule on this specific claim because the trial court granted Edwards the full fluctuating section 102 prices through the end of the contract in October 1985." Edwards then request this Court to decide that claim on rehearing and to "render the judgment the trial court should have rendered."

Having acknowledged that this issue was not presented to the trial court for determination, Edwards cannot now complain at the appellate level. *Roling v. McGeorge*, 645 S.W.2d 886, 888 (Tex.Civ.App.—Tyler 1983, no writ); *Vendig v. Traylor*, 604 S.W.2d 424, 430 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Edwards' fourth point is overruled.

Having overruled all of Edwards' points on motion for rehearing, we continue to believe our original judgment in this case is the correct one, and, therefore, overrule Edwards' motion for rehearing in the matter.

■ Appellants have also filed a motion to strike appellee's reply to their motion for rehearing. In that motion, they acknowledge that appellee received a copy of the motion and its supporting documents on January 18, 1989. Texas Rule of Appellate Procedure 19(a) provides that a response to a motion may be filed within 10 days after service of the motion, unless the court has shortened or extended the time for filing that response. The tenth day after service of the motion in question was Saturday, January 28, 1989. Texas Rule of Appellate Procedure 5(a) provides that the day upon which a designated period of time begins to run is not to be included. The last day of the period, however, is to be included unless it is a Saturday, Sunday, or legal holiday in which event the period runs until the end of the next day which is neither a Saturday, Sunday, nor legal holiday. In their motion, appellants acknowledge the filing of the response on Monday, January 30, 1989. Therefore, even under appellant's computation, the response was timely received. Moreover, and parenthetically, under Texas Rule of Appellate Procedure 100, no response to a motion for rehearing is required. Appellants' motion to strike the response is also overruled.