Rex A. SPENCER and Wife, Edith A.
Spencer, Appellants,

v.

P.M. ANDERSON, et al., Appellees.

No. 13–83–178–CV.

Court of Appeals of Texas,
Corpus Christi.

April 19, 1984.

Rehearing Denied May 10, 1984.

Stephen P. Dietz, McAllen, for appellants.

Alan D. Monroe, Edinburg, Robert L. Guerra, McAllen, Richard C. Smith, Edinburg, for appellees.

Before KENNEDY, UTTER and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This is a summary judgment case. Appellants originally brought suit against Texas Golf Associates, Ltd. (TGA), Hidalgo Savings & Loan Association (the Bank), Lawyer's Title Insurance Corporation (the Title Company), and Mr. P.M. Anderson, seeking to recover damages incurred following their acquisition of residential property. Appellants' action against the Bank and the Title Company was severed, and both the Bank and the Title Company filed cross-actions for contribution and indemnity from P.M. Anderson and TGA. The Bank and the Title Company then moved for summary judgment, and both motions were granted; consequently, the trial court also ordered that the Bank and the Title Company take nothing from their cross-action against P.M. Anderson and TGA. Appellants contend on appeal that the motions for summary judgment should not have been granted. We affirm the judgment of the trial court.

The property in question was located in a residential area known as Monte Cristo Country Club. Anderson was an owner of and served as a manager of the Country Club. On August 24, 1974, Anderson executed a Sales Contract with the Guerreros, the first purchasers of the property. Anderson built a house and installed "a water meter and other such facilities for the supply of water and sewer services" on the Guerrero lot. Anderson conveyed the property to the Guerreros on March 25, 1975, and the purchase was financed by the Bank. After the Guerreros occupied the house, Anderson incurred expenses for the development costs of "amenities" within the subdivision; however, these expenses were not paid by the Guerreros. The Guerreros defaulted on their payments to the Bank, and on February 6, 1979, their lot and all the improvements on it were conveyed by trustee's deed to the Bank. In his deposition testimony, Anderson conceded that he never requested the Bank to pay the amenity costs, nor did he ever present a written charge to the Guerreros. When the Bank acquired title after the Guerreros' default, it apparently began renovation of the home. At this time, Anderson removed the water meter from the lot. On April 27, 1979, appellants purchased the property from the Bank. Appellants also obtained a title insurance policy from the Title Company which guaranteed them a fee simple in the property and under which the Title Company agreed to defend them on any claim against their estate or interest.

In July of 1979, Anderson notified appellants that the "amenities" for their lot had not been paid, and demanded $6,600.00 as their proportionate share of the development costs for the amenities. Anderson refused to install a water meter or supply appellants with water service until the amount was paid. Appellants notified the Title Company of Anderson's demands for the $6,600.00 and of his refusal to supply water, and now contend on appeal that the Title Company thereafter wrongfully refused to clear the title and represented that it

had no obligation under the policy to do so. Appellants denied having any knowledge, before they purchased the property, that the "amenity" development assessment was owed to Anderson.

The record also reflects that on August 18, 1980, the Public Utility Commission (PUC) initiated an inquiry into the "rates, operations, and quality of utility services" of TGA and Monte Cristo Country Club. On February 24, 1981, the inquiry was dismissed pursuant to a motion by the general counsel of the PUC because (1) the general counsel was notified by appellants' attorney that utility service had been initiated to them, and (2) the bylaws of the Country Club had been properly amended. Appellants contend, however, that "Anderson continued to assert the right of TGA to collect the $6,600.00 and interfered with [appellants'] efforts to sell their property." Thus, on November 21, 1981, appellants executed a Settlement Agreement with Anderson, under the terms of which appellants promised to pay Anderson $6,500.00 "upon the sale [of their lot] as full and complete payment and satisfaction of the proportionate share of development costs for amenities for the said property." Appellants argue that executing the Settlement Agreement appeared to be the only "expeditious approach" by which they could sell their property, and that they were thus acting under "compulsion."

### SUMMARY JUDGMENT IN FAVOR OF LAWYER'S TITLE INSURANCE COMPANY

Appellants contend that the trial court erred by granting summary judgment in favor of the Title Company because (1) the summary judgment evidence established a cloud on their title; (2) there was no summary judgment evidence that disposed of their cause of action under the Texas Deceptive Trade Practices Act; and (3) the summary judgment evidence did not establish as a matter of law that appellants, by executing the settlement agreement with Anderson without the written consent of the Title Company, thereby voluntarily assumed liability under the terms of the policy.

"A cloud on title has been generally defined as a semblance of title ... which is, in fact, invalid or would be inequitable to enforce...." This Court has previously defined a cloud on title as follows:

> "Any deed, contract, judgment or other instrument not void on its face which purports to convey any interest in or makes any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner."

*Vanguard Equities, Inc. v. Sellers*, 587 S.W.2d 521 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Best Investment Company v. Parkhill*, 429 S.W.2d 531 (Tex.Civ.App. —Corpus Christi 1968, no writ).

■ We realize that it has been noted that "mere recording of an otherwise innocuous instrument" does not necessarily create a cloud on title; similarly, an instrument may create a cloud, even if it is unrecorded. *Texan Development Co. v. Hodges*, 237 S.W.2d 436 (Tex.Civ.App.— Amarillo 1951, no writ). However, the cases we have examined in which the courts have found "clouds" on title involve some claim to *title* by each of the opposing parties. For example, in the case of *Lee v. Grupe*, 223 S.W.2d 548 (Tex.Civ.App.—Texarkana 1949, no writ), the proof found sufficient to constitute a cloud on title consisted of evidence showing that the defendant had committed a trespass *and* that the defendant was claiming the land. In addition, "[a]n interest in real property, as a general rule, can only be established by a valid written instrument and not by parol evidence." *Rocha v. Campos*, 574 S.W.2d 233 (Tex.Civ.App.—Corpus Christi 1978, no writ).

■ In the case before us, there was no written instrument under which Anderson asserted any claim of ownership in the land; Anderson claimed ownership only of the water meter, and specifically testified that he "was not the lot owner after the default by Guerrero."

We hold that the interference made by Anderson did not amount to a "cloud" on the title of appellants. Anderson testified that the Guerreros had not been required to pay the $6,600.00 immediately because of Mr. Guerrero's "anticipated assistance in sales and development of memberships" during the development of the area. The Guerreros were expected to pay eventually, but defaulted on their loan first. Anderson never requested the Bank to pay for the services, but did demand that appellants pay, although the appellants could have found out about the amount "due" prior to purchasing the property only by having gone to the sales office and asking about it. Anderson conceded that he refused to provide appellants with a water meter solely because the amenities were unpaid, and that all he could do to collect was withhold service; there was no other way for appellants to obtain water. Anderson also conceded that he had not demanded that the Guerreros pay the $6,600.00 because Mr. Guerrero had separated from his wife and did not have the money. Anderson further stated that Mr. Guerrero had been "obligated to tell anyone involved" about the assessment.

Appellants had no reason to believe that they would be held responsible for $6,600.00 worth of development expenses which Anderson determined to run with the real estate once he failed to collect from the original owners. Anderson was simply trying to recoup expenses previously borne by him, and was not asserting a right to ownership of any interest in the real estate itself. We hold that there was no "cloud" on appellants' *title*, and that the Title Company consequently had no duty to defend appellants in this suit. Appellants' second point of error is overruled.

In their third point of error, appellants contend that there was no summary judgment evidence which would dispose of their DTPA action. This point is unbriefed, except for passing allegations that such a cause of action existed; appellants did not even specify under which section of the DTPA they sought to recover.

■ "The function of summary judgment is to eliminate 'patently unmeritorious claims or untenable defenses'" .... Rule 166–A provides "a method of summarily terminating a case *when it 'clearly appears* that only a question of law is involved and that there is no genuine issue of fact.'" *Swilley v. Hughes,* 488 S.W.2d 64 (Tex.1972). However, a defending party is entitled to summary judgment if he establishes, as a matter of law, that no genuine issue of material fact exists with respect to one or more essential elements of the plaintiff's cause of action. *Federated Department Stores, Inc. v. Houston Lighting & Power Co.,* 646 S.W.2d 509 (Tex.App.— Houston [1st Dist.] 1982, no writ). Formal issues framed in the pleadings will not be controlling when extrinsic evidence demonstrates the absence of any true issue. *Shaunty v. Burrus Mills, Inc.,* 349 S.W.2d 789 (Tex.Civ.App.—Forth Worth 1961, no writ). And mere conclusions will be insufficient to raise a fact issue that precludes summary judgment. *Balboa Insurance Company v. K & D and Associates,* 589 S.W.2d 752 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

■ Our review of both the record before us and the DTPA itself convinces us that there is no fact issue on whether the Title Company committed a specifically proscribed or otherwise unconscionable or deceptive act under the DTPA. Appellants' third point of error is overruled.

In their fourth point of error, appellants contend that the summary judgment evidence fails to establish as a matter of law that they voluntarily assumed any liability without the written consent of the Title Company. This point arises in response to the Title Company's contention that any liability on its part was waived when appellants settled with Anderson. However, since we have previously ruled that the Title Company was not liable, we decline to address the merits of the argument that the Title Company's liability was not waived. Appellants' first four points of error are overruled.

## SUMMARY JUDGMENT IN FAVOR OF HIDALGO SAVINGS AND LOAN ASSOCIATION

In their fifth point of error, appellants contend that the trial court erred by granting summary judgment for the Bank because the summary judgment evidence conflicts on whether a valid lien attached to the property while the Bank held title. The record reflects that the Bank executed to appellants a Special Warranty Deed which warranted title "against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under it, but not otherwise."

■ Appellants argue that the evidence at best conflicts on whether a lien existed against the property because, while Anderson testified that he was not claiming a lien, "his actions and written representations to the trial court and the Public Utility Commission are to the contrary." Appellants did not note which actions and written representations were to the contrary, or where in the more than 750-page summary judgment record the evidence could be found. The argument under this point of error consists of several conclusory statements, and the only authority cited is for a general principle of law which is unresponsive to the specific issue presented. We find this point of error not in compliance with Rule 418 of the Texas Rules of Civil Procedure (Vernon Supp. 1984) and therefore waived. If the point were considered, we would not find a material issue of fact on whether a valid lien attached while the Bank held title, since we think, as a matter of law, that the demand for payment of the $6,600.00 was not a "valid lien."

"Generally speaking, a specific debt (an obligation to pay money) is necessary to support a lien; the lien is affixed to land as security for some obligation to pay money." *Calvert v. Hull,* 475 S.W.2d 907 (Tex. 1972). Thus, "it is fundamental that without a debt there can be no lien." *Shipley v. Biscamp,* 580 S.W.2d 52 (Tex.Civ.App.— Houston [14th Dist.] 1979, no writ). But the authorities we have examined uniformly contemplate some sort of *transaction* between parties. *See Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Williams v. Greer,* 122 S.W.2d 247 (Tex.Civ.App.—Dallas 1938, no writ).

■ In the action before us, Anderson neglected to regain his development expenses from the first two owners of the property, and then arbitrarily assessed the oral debt to appellants. We will not hold that such unilateral action can create a *fact* issue on whether a valid lien, or even a valid debt, exists. Appellants argue that Anderson's action of removing the water meter constitutes some evidence that a lien was being assessed; however, to so hold would be to impliedly grant authority to those in a position similar to Anderson's to create a lien at their leisure by merely evincing an intention to collect for a debt, whether real or imagined. We hold that there is no issue of material fact before us, and that we cannot say that the trial court erred as a matter of law. All of appellants' points of error are overruled, and the judgment of the trial court is affirmed.