ACE SALES COMPANY, INC. and Wholesalers, Inc., Appellants,

v.

CERVECERIA MODELO, S.A. de C.V., et al., Appellees.

No. 13–87–001–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 24, 1987.

Rehearing Denied Oct. 29, 1987.

William Robert Anderson, Corpus Christi, for appellants.

Mary Joe Carroll, Austin, J. Chris Rodriguez, Corpus Christi, for appellees.

Before NYE, C.J., and SEERDEN and UTTER, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal by Ace Sales Co., Inc. and Wholesalers, Inc. (Ace) from a summary judgment granted in favor of Cerveceria Modelo, S.A. de C.V. (Modelo). We affirm.

Ace filed suit seeking damages under the Beer Industry Fair Dealing Law and the Texas Deceptive Trade Practices Act for Modelo's action in cancelling and terminating an alleged territorial agreement between Ace and Modelo. Prior to this action, Ace had been selling Modelo products in Nueces and neighboring counties. In July, 1984, Peter McNally, President of Ace, notified Timm Amundson of Barton Brands, Ltd., Modelo's U.S. sales representative, that Ace was going to sell all the stock of its business to Wholesalers, Inc. Barton was a successor company to a com-

pany called A.D.P. Medley. Barton then began looking for another local distributor for Modelo Products. Although Barton considered Wholesalers, Andrews Distributing Company was named as distributor. Ace and Wholesalers sued. Modelo contended that Ace failed to comply with the requisites of the Beer Industry Fair Dealing Law because it had never entered into a written territorial agreement with Modelo. The trial court granted summary judgment against Ace and Wholesalers.

A defendant moving for summary judgment has the burden of showing as a matter of law that no material issue of facts exists regarding plaintiff's cause of action. *Griffin v. Rowden,* 654 S.W.2d 435 (Tex. 1983). This may be accomplished by showing that at least one element of plaintiff's cause of action has been conclusively established against the plaintiff. *Spencer v. Anderson,* 669 S.W.2d 862, 865 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.). The burden of demonstrating lack of genuine issues of fact is on the movant, and we resolve all doubts against the movant in our review. *Missouri—Kansas—Texas R.R. Co. v. City of Dallas,* 623 S.W.2d 296 (Tex.1981).

By its first five points of error, Ace argues that the summary judgment was improper. Specifically, it argues that Modelo failed to controvert the existence of a written territorial agreement, that there is a fact issue concerning the existence of a written territorial agreement or alternatively that a written agreement is neither required nor a prerequisite to filing suit under the Act.

The applicable provisions under the Beer Industry Fair Dealing Act, Tex.Alco.Bev. Code Ann. § 102.77 (Vernon Supp.1987) provide:

Any *manufacturer* who, without good cause, cancels, terminates, or fails to renew any agreement, or unlawfully denies approval of, or unreasonably withholds consent, to any assignment, transfer, or sale of a distributor's business assets or voting stock or other equity securities, shall pay such distributor with whom it has an agreement *pursuant to Section 102.51 of this Code* the fair market value of the distributor's business with relation to the affected brand or brands. In determining fair market value, consideration shall be given to all elements of value, including but not limited to goodwill and going concern value. (emphasis added)

Section 102.51, entitled Setting of Territorial Limits, provides under subsection (b):

Each holder of a general, local or branch distributor's license *shall enter into a written agreement with each manufacturer* from which the distributor purchases beer for distribution and sale in this state setting forth the sales territory within each brand of beer purchased by the distributor may be distributed and sold.... A *copy of the agreement* and any amendments to it *shall be filed with the administrator.* (emphasis added)

Section 102.79 provides:

(a) If a *manufacturer or distributor who is a party to any agreement pursuant to Section 102.51 of this code* fails to comply with this Act or otherwise engages in conduct prohibited under this act, or if a manufacturer or distributor are not able to mutually agree on reasonable compensation under Section 102.77 of this Code and the matter is not to be submitted to arbitration, the aggrieved manufacturer or distributor may maintain a civil action in a court of competent jurisdiction in the county in which the distributor's principal place of business is located. (emphasis added)

Before we determine whether a fact issue was raised concerning the existence of a written agreement, we will address appellants' argument that a written agreement is unnecessary under the Act.

■ Appellants first argue that a written agreement is unnecessary because Tex. Alco.Bev.Code Ann. § 102.71(2) defines agreement as "any contract, agreement, or arrangement, whether expressed or implied, whether oral or written, for a definite or indefinite period between a manufacturer and a distributor pursuant to which a distributor has the right to purchase, resell, and distribute any brand or brands of beer

offered by a manufacturer." Appellants have disregarded the fact that the statute which authorizes suit in a civil court specifically states that there must be an agreement pursuant to section 102.51, which mandates an agreement in writing. Further, section 102.77, which provides the requested relief sought by appellants also requires the agreement be in writing pursuant to section 102.51.

Appellants also argue that the term "pursuant to" is not the same as the term "defined by". They argue that the Legislature did not intend the requirement of having a written and recorded contract to assert a claim. We disagree with appellants' contentions. If the Legislature had intended that the definition of agreement set forth in 102.71 be controlling, there would have been no reason to include the term "pursuant to Section 102.51" in both Sections 102.77 and 102.79. We believe that a written agreement is required to pursue a cause of action under this statute. Appellant's fourth and fifth points of error are overruled.

■ Appellants also argue that there is a fact issue concerning the existence of a written agreement. We will review the summary judgment evidence for both sides.

Appellee included in its motion for summary judgment the affidavit of Joe Darnall, General Counsel to the Texas Alcoholic Beverage Commission (TABC). Darnall testified that the territorial agreements received by the TABC administrator pursuant to Section 102.51 are sent to the agency and placed in the files of the distributor licensee. According to Darnall, Ace's file contained no agreement authorizing it to sell Corona beer or any other product manufactured by Modelo. Darnall testified that the TABC has consistently construed section 102.51 to require a written agreement to be signed by an officer of the manufacturer. The TABC has refused to accept for filing any agreement signed by any other person or entity purporting to grant a territory unless the signer was authorized to contract on behalf of the manufacturer. Letters explaining the agency's position are sent to anyone sub-

mitting an unacceptable territorial agreement. No such letters appear in the files relating to licenses held by Ace or Modelo. Neither Barton nor A.D.P. Medley (Barton's predecessor) was ever issued a license authorizing any type of transaction relating to the beer industry in Texas. No letter signed by Meyer Moussa of A.D.P. Medley or letter responding to an attempted filing is contained in Ace's file.

Carlos Alvarez, export manager for Modelo, testified by affidavit that he was the individual authorized to execute territorial agreements on behalf of Modelo, until December 7, 1984, when a limited power of attorney was granted by Modelo to three designated employees of Barton. Alvarez said that prior to December 1984 he signed a substantial number of instruments designating sales territories. However, he did not recall signing an agreement designating a sales territory to Ace. He also noted that Modelo's files in Mexico City did not indicate an agreement between Ace and Modelo.

Michael Mazzoni, a vice-president and general manager of Barton Beers, Ltd., swore by affidavit that Barton was formerly known as A.D.P. Liquor Imports. A search of the files revealed no territorial agreement between Modelo and Ace or A.D.P. Medley or Barton and Ace. He found no letter signed by Meyer Moussa purporting to assign Ace a territory to distribute beer. The files contained no letter indicating a request on behalf of Ace for a territorial agreement designating an area for sale of beers manufactured by Modelo. Neither before nor after the execution of the limited power of attorney did Barton or any officer or employee receive a letter, telephone call or other information indicating a request for a territorial agreement between Ace or Modelo.

Fred Mardell, vice-president and secretary of Barton, testified that no agreement or copy of an agreement between Modelo and Ace or A.D.P. and Ace was contained in their files. Prior to December 7, 1984, in instances where territorial agreements were requested, they were submitted to the manufacturer for approval and execution.

Since receiving authorization, a designated officer of Barton has executed territorial agreements on behalf of Modelo, but prior to that date the only designations of territory or territorial agreements found in the files were signed on behalf of Modelo, by Carlos Alvarez, who was export manager for the nonresident manufacturer.

Ed Montgomery testified that he was at one time sales representative for A.D.P. Medley. He continued in this capacity until March 1984. He made arrangements with Ace to place its orders directly with him. He said that he had no authority to enter into any sort of agreement on behalf of Modelo.

Timm Amundson testified by affidavit that he was employed as sales representative for Barton Beers. He testified that he had no authority to enter into any sort of agreement on behalf of Modelo. He had no authority from Barton to enter into or terminate a sales agreement with any Texas distributor.

Meyer Moussa testified that he has been an officer of A.D.P. He did not recall ever having written a letter or any other type of contract assigning to Ace any territory for the sale of Modelo products. The files relating to foreign manufactured beer which had been kept by A.D.P. were turned over to Barton.

Appellants filed two affidavits in response to Modelo's motion for summary judgment concerning the existence of a written agreement. Lloyd Alan Rohlfs testified that he was a former shareholder, director and officer of Ace. He said that he had seen a written agreement authorizing Ace to sell Modelo products. To the best of his knowledge, the agreement was signed by Meyer Moussa of A.D.P. Medley.

Robert Larkin testified that he was a former employee of Ace. Prior to July 1984, he saw a written agreement which, to the best of his knowledge, was correspondence from Meyer Moussa who was associated with A.D.P. Medley. He has been unable to locate the written agreement signed by Moussa.

The affidavit of Peter McNally, president of Ace, which was also submitted by appellants, states that he notified manufacturers with which it had exclusive agreements that the stock of the company was being sold. This does not raise a fact issue concerning the existence of a written agreement.

Further, appellants point to the deposition of Meyer Moussa as support for its position. Moussa said that he did not recall executing any written territorial agreements with Texas distributors. He also said that he had no reason to doubt Bob Larkin if he said there was a written territorial agreement between A.D.P./Medley and Ace. However, he had no specific recall of such an agreement. This testimony does not create a fact issue. Larkin's own affidavit states only that he saw a written agreement which, to the best of his recollection, was correspondence from Meyer Moussa granting Ace the right to distribute Modelo products. Larkin's affidavit, by itself, does not create a fact issue. The fact that Moussa did not dispute Larkin's credibility does not establish a fact issue.

In order to recover under the Beer Industry Fair Dealing Law, it is incumbent upon a plaintiff to prove an agreement pursuant to Section 102.51, which requires a written agreement with a manufacturer which is filed with the TABC administrator. It follows then that in order to obtain a summary judgment, the defendant has the burden to show that at least one element of the plaintiff's cause of action has been conclusively established against the plaintiff.

Here, Modelo's summary judgment evidence shows that no written agreement has been located after all possible locations had been checked. The TABC representative found no filed written territorial agreement. Carlos Alvarez, Modelo's export manager, said that he did not recall signing an agreement with Ace, nor did Modelo's records reflect an agreement. Ace's responsive affidavits state only that they recalled an agreement. Both affidavits suggest that the agreement was with Meyer Moussa of A.D.P. Medley, the U.S. sales representative. However, the statute specifically states the agreement was to be made with the manufacturer. The summa-

ry judgment evidence conclusively showed that at the time of this transaction, representatives of A.D.P. were not authorized by Modelo to enter into territorial agreements. Limited power of attorney was not granted until December, 1984. This was after the stock transfer from Ace to Wholesalers. Modelo's summary judgment evidence conclusively showed that there was no written agreement with the manufacturer which has been filed with the TABC administrator.

Appellants' first and third points of error are overruled.

■ Appellants argue in their sixth point of error that even in the event a written territorial agreement is a prerequisite for suit, it does not include a breach of a territorial agreement concerning Nueces County only. They argue that Section 102.-52(b) imposes no territorial agreement requirement on a distributor who sells only in the county in which the distributor's licensed premises are located; therefore, the trial court erred in granting summary judgment because a substantial portion of the sales in question were in Nueces County.

Appellants may not recover under the statute without a written agreement. The fact that Ace sold Modelo products in Nueces County does not violate the Beer Industry Fair Dealing Law, nor does it show a breach of a territorial agreement because there was no prohibition against selling beer in Nueces County without an agreement. Appellants' contention is without merit. We overrule appellants' sixth point of error.

■ Appellants argue by their seventh point of error that Modelo is estopped to deny the existence of a written territorial agreement. The primary thrust of their argument is that Barton should be prohibited from asserting any defense based upon violation of the statute, after Barton assented to the agreement and accepted it according to its terms.

■ It is clear from appellants' pleadings that they intended to recover under a statutory cause of action. Texas courts have consistently recognized that if a cause of action and remedy for its enforcement are derived from a statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable. *Texas Catastrophe Property Insurance Association v. Council of Co-Owners of Saida II Towers Condominium Association,* 706 S.W.2d 644, 646 (Tex.1986). The doctrine of estoppel is not applicable in this case. The purpose of estoppel is to preserve rights, not to create an independent cause of action. *Missouri Pacific Railroad Co. v. American Statesman,* 552 S.W.2d 99 (Tex.1977). We do not see how appellants may recover under the statute unless a written agreement is shown, and whether Modelo assented to selling Ace beer without an agreement, in no way creates a cause of action under the statute. Appellants' seventh point of error is overruled.

Appellants argue in their second point that Modelo failed to contradict the existence of a written agreement by verified denial under Tex.R.Civ.P. 93(7). The absence of a sworn denial was not raised at the trial court. Therefore, nothing is presented here. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

■ Appellants argue by their eighth through sixteenth points of error that the trial court erred in granting Modelo's motion for new trial. The record reflects that a default judgment against Modelo was granted by the trial court on January 24, 1986. The trial judge set aside the default on February 21, 1986. A trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed. Tex.R.Civ.P. 329b(a) and (d). The trial court's action was a proper use of its plenary power. Points of error eight through sixteen are overruled.

The judgment of the trial court is AFFIRMED.