**GLAZER'S WHOLESALE DISTRIBUTORS, INC.,
Appellant,**

v.

**HEINEKEN USA, INC., Heineken Brouwerijen B.V., and Amstel Brouwerij B.V., Appellees.**

**In re Glazer's Wholesale Distributors, Inc.**

**No. 05–99–01685–CV.**

Court of Appeals of Texas, Dallas.

June 29, 2001.

Alan N. Greenspan, Jackson & Walker, L.L.P., William David Ellerman, Dallas, for Appellant.

Scott R. Hoyt, Gibson, Dunn & Crutcher, Dallas, for Appellee.

Before Justices LAGARDE, MOSELEY, and FITZGERALD.

## OPINION

FITZGERALD, Justice.

Glazer's Wholesale Distributors, Inc. brings an interlocutory appeal of the trial court's order granting Heineken USA, Inc., Heineken Brouwerijen B.V., and Amstel Brouwerij B.V.'s motion to compel arbitration. Glazer's also brings a petition for writ of mandamus requesting that we order the trial court to set aside its order compelling arbitration. This Court consolidated the two cases. We dismiss the appeal for want of jurisdiction. Because we

determine the statute requiring arbitration, as applied in this case, unconstitutionally delegates judicial authority in violation of article five, section one of the Texas Constitution, we conditionally grant the petition for writ of mandamus.

## FACTUAL BACKGROUND

Glazer's is a distributor of alcoholic beverages and was hired by Heineken Brouwerijen B.V. and Amstel Brouwerij B.V. (collectively "Heineken") to distribute their products. Glazer's distributorship contracts provide they are terminable only "for good cause." [1] On January 21, 1999, Heineken notified Glazer's that it was terminating the distributorship contracts due to dissatisfaction with Glazer's performance.

Glazer's brought suit against Heineken and its local agent, Heineken USA, Inc., and against another distributor, Miller of Dallas, Inc., alleging common-law causes of action of breach of contract, conspiracy, breach of fiduciary duty, tortious interference with contract, fraud, and negligent misrepresentation. Glazer's also sued Heineken alleging a statutory cause of action for violating the Beer Industry Fair Dealing Law. *See* TEX. ALCO. BEV.CODE ANN.

§§ 102.71–.81 (Vernon 1995) (hereafter, "the Act"). Glazer's alleged that Heineken violated section 102.74 because it lacked good cause to terminate the contracts. Glazer's demanded compensation for the value of the distributorship business relating to Heineken's brands.

Section 102.74 of the Act prohibits a beer manufacturer from terminating a distributorship contract unless it has good cause and has afforded the distributor the opportunity to cure the problems constituting good cause. *See* TEX. ALCO. BEV.CODE ANN. § 102.74 (Vernon 1995). If the manufacturer terminates the contract without good cause, it must pay the distributor the fair market value of the distributorship business relating to the terminated brands. *See id.* § 102.77(a); *see also Ace Sales Co. v. Cerveceria Modelo, S.A. de C.V.*, 739 S.W.2d 442, 444 (Tex.App.—Corpus Christi 1987, writ denied). Glazer's sought actual and exemplary damages, attorney's fees, declaratory judgments, and temporary and permanent injunctions reinstating Glazer's right to distribute the Heineken brands.

Heineken answered and moved the trial court to compel arbitration pursuant to section 102.77(b) of the Act, which provides

1. The contracts with each manufacturer are nearly identical and are in the form of letters from the manufacturers to Glazer's:

We hereby appoint you as a distributor on a nonexclusive basis of [Heineken Beer, Amstel Light Beer] for the following territory: Entire State of Texas.
You agree to devote your reasonable efforts and resources to the sale and distribution of the products which you are authorized to distribute and to maintain satisfactory sales levels in the territory assigned to you hereunder.
We will use our reasonable efforts to supply you with the quantities of the products which you order and require in the territory assigned to you.
Either of us may terminate this distributorship arrangement between us for good

cause on at least 90 days written notice sent by certified or registered mail, return receipt requested, the 90 day period to commence on the day the notice is deposited in the United States Post Office. The provisions of this paragraph are subject to the applicable laws and regulations of the State of Texas.
It is understood that this agreement constimay not be changed in any manner except by a written document signed by the President or a Vice President of our company. Please sign the duplicate copy of this letter to indicate your agreement to the terms set forth above and return it to our importer, Van Munching & Co., Inc. at their New York Office.

that if the manufacturer and distributor cannot agree on whether "good cause" for termination exists or on the value of the distributorship business,

> the matter may, at the option of either the distributor or manufacturer, be submitted to three arbitrators.... The award of the arbitrators shall be binding on the parties unless appealed within 10 days from the date of the award. All proceedings on appeal shall be in accordance with and governed by the Texas General Arbitration Act, as amended.

TEX. ALCO. BEV.CODE ANN. § 102.77(b) (Vernon 1995). The trial court granted the motion and ordered the parties to arbitrate only Glazer's claim "that the Heineken Defendants violated section 102.74 of the Texas Alcoholic Beverage Code ... for determination of whether or not good cause existed for cancellation of the distribution contracts ... and the amount of the reasonable compensation, if any, to be paid for the value of the Plaintiff's business...." The trial court stayed the litigation of Glazer's other causes of action pending resolution of the arbitrable issues. Glazer's filed an interlocutory appeal of this order and a petition for writ of mandamus requesting that we order the trial court to set aside the order compelling arbitration.

## JURISDICTION OVER THE INTERLOCUTORY APPEAL

■ Ordinarily, a party may not appeal an action until it obtains a final judgment. Pursuant to section 102.77(b) of the Act, appellant's right of appeal is governed by the Texas General Arbitration Act, which only permits a party to bring an interlocutory appeal of an order:

(1) denying an application to compel arbitration ...;

(2) granting an application to stay arbitration ...;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1)-(5) (Vernon Supp.2001). An order *granting* a motion to compel arbitration is not one of the permitted categories for an interlocutory appeal under the Texas General Arbitration Act. *See id.; Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc.,* 944 S.W.2d 68, 69 (Tex. App.—Dallas 1997, no writ); *see also Materials Evolution Dev., USA, Inc. v. Jablonowski,* 949 S.W.2d 31, 33 (Tex.App.—San Antonio 1997, no writ).

Glazer's argues that the supreme court, in *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266 (Tex.1992) (orig.proceeding), held the Texas General Arbitration Act permits an interlocutory appeal of an order compelling arbitration. In *Anglin,* the court did state that the Texas General Arbitration Act allows a party "to appeal from an interlocutory order *granting or denying* a request to compel arbitration." *Id.* at 271–72 (emphasis added). However, this Court has held that language to be dicta insofar as it purports to authorize an appeal of an order compelling arbitration. *See Lipshy Motorcars, Inc.,* 944 S.W.2d at 70; *see also In re Van Blarcum,* 19 S.W.3d 484, 488–89 n. 7 (Tex.App.—Corpus Christi 2000, orig. proceeding) (citing *Lipshy Motorcars* ).

The Texas General Arbitration Act clearly does not authorize Glazer's to bring an interlocutory appeal of the order compelling arbitration. Accordingly, we lack jurisdiction over the appeal. *See id.* We dismiss the appeal for want of jurisdiction.

## MANDAMUS

 Mandamus is an extraordinary remedy and is available only in limited circumstances of manifest and urgent necessity. *See Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989) (orig.proceeding). The writ of mandamus will issue only to correct a clear abuse of discretion or violation of duty imposed by law, when no adequate remedy at law exists. *See In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 128 (Tex.1999) (orig.proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding); *Jampole v. Touchy*, 673 S.W.2d 569, 572–73 (Tex.1984) (orig.proceeding).

 An abuse of discretion occurs when the trial court's decision is arbitrary and unreasonable "as to amount to a clear and prejudicial error of law." *Harris v. Jones*, 8 S.W.3d 383, 385 (Tex.App.—El Paso1999, no pet.); *Walker*, 827 S.W.2d at 839; *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996). The relator must establish that the facts and law allow for only one decision. *See Walker*, 827 S.W.2d at 839; *In re Clark*, 977 S.W.2d 152, 155 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding). When the trial court, in exercising otherwise discretionary authority, "has but one course to follow and one way to decide, discretionary power is effectively null." *Harris*, 8 S.W.3d at 385, 386; *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). The trial court does not have any "discretion" in determining what the law is or applying the law to the facts in the case; therefore, appellate review is much less deferential regarding a trial court's determination of the legal principles controlling its ruling. *See In re Perritt*, 973 S.W.2d 776, 780 (Tex.App.—Texarkana 1998, orig. proceeding); *City of Lubbock v. Hancock*, 940 S.W.2d 123, 124 (Tex.App.—Amarillo 1996, orig. proceeding). Thus, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker*, 827 S.W.2d at 840; *see In re Godt*, 28 S.W.3d 732, 738 (Tex.App.—Corpus Christi 2000, orig. proceeding); *In re Jebbia*, 26 S.W.3d 753, 756 (Tex.App.—Houston [14th Dist.] 2000, orig. proceeding); *Weber v. Hall*, 929 S.W.2d 138, 140 (Tex.App.—Houston [14th Dist.] 1996, orig. proceeding). Mandamus is available to correct judicial action contrary to well-settled law derived from binding precedent from a court of superior jurisdiction. *See Kozacki v. Knize*, 883 S.W.2d 760, 762 (Tex.App.—Waco 1994, orig. proceeding) (per curiam); *City of Lubbock*, 940 S.W.2d at 125; *see also In re Smith Barney, Inc.*, 975 S.W.2d 593, 597 (Tex.1998) (doctrine of stare decisis requires lower courts to follow supreme court precedents) (quoting *21 Int'l Holdings, Inc. v. Westinghouse Elec. Corp.*, 856 S.W.2d 479, 486 (Tex.App.—San Antonio 1993, no writ) (Peeples, J., concurring), *overruled on other grounds by In re Smith Barney, Inc.*, 975 S.W.2d at 598); *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993) (stare decisis rule restated). Mandamus is also appropriate in cases of first impression where an abuse of discretion is found. *See Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996) (orig.proceeding); *In re News Am. Publ'g, Inc.*, 974 S.W.2d 97, 105 (Tex.App.—San Antonio 1998, orig. proceeding).

 The writ will not issue if another remedy, usually an appeal, is available and adequate. *See Street v. Second Court of Appeals*, 715 S.W.2d 638, 639 (Tex.1986) (orig.proceeding); *In re Levi Strauss & Co.*, 959 S.W.2d 700, 702 (Tex.App.—El Paso 1998, orig. proceeding). This ex-

traordinary remedy applies only in situations involving "manifest and urgent necessity." *Walker*, 827 S.W.2d at 840; *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989) (orig.proceeding). Expense or delay are generally insufficient to demonstrate an appellate remedy is inadequate. However, interference through the issuance of the writ is justified "when parties stand to lose their substantial rights." *Walker*, 827 S.W.2d at 842; *see Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 306 (Tex.1994) (orig.proceeding). In *Walker*, the supreme court found that a party would not have an adequate remedy by appeal "when the appellate court would not be able to cure the trial court's discovery error" (for instance, if the trial court erroneously required disclosure of documents protected by the attorney-client privilege). *Walker*, 827 S.W.2d at 843. Similarly, if a trial court erroneously required a party to participate in binding arbitration, a party will not have an adequate appellate remedy to protect its substantial right to litigate the issues in open court. *See id.*; *Solis v. Evins*, 951 S.W.2d 44, 52 (Tex. App.—Corpus Christi 1997, orig. proceeding).

In *Jack B. Anglin Co.*, Anglin filed an application to compel arbitration on all the City's claims, including breach of contract, negligence, and the Texas Deceptive Trade Practices Act (DTPA). *See Anglin*, 842 S.W.2d at 267. The trial court ordered arbitration only as to the City's breach of contract cause of action; it denied arbitration of the City's DTPA claim. *See id.* at 268. The supreme court held, in part, that Anglin was denied its contractual right of arbitration of the City's DTPA claim under the Federal Arbitration Act, and "absent mandamus relief, Anglin would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." *Id.* at 273.

In *Freis v. Canales*, 877 S.W.2d 283 (Tex.1994) (orig.proceeding) (per curiam), the supreme court considered whether mandamus would lie from an order compelling arbitration under the Federal Arbitration Act.[2] *See id.* at 284. The court stated, "[A] party who is compelled to arbitrate *without having agreed to do so* will have lost its right to have the dispute resolved by litigation. Accordingly, such a party has no adequate remedy by appeal." *Id.*; *see also Turford v. Underwood*, 952 S.W.2d 641, 643 (Tex.App.—Beaumont 1997, orig. proceeding) ("A party compelled to arbitrate without having agreed to do so, having lost his right to have the dispute resolved by litigation, has no adequate remedy at law and may seek review by mandamus.").

In this case, Glazer's complains of the court ordering arbitration without the parties' having an agreement to do so. We conclude that if the trial court improperly ordered Glazer's to arbitration, it has no adequate remedy by appeal. *See In re Godt*, 28 S.W.3d at 738; *Solis*, 951 S.W.2d at 52; *see also Canadian Helicopters Ltd.*, 876 S.W.2d at 306 (requirement that relator lack adequate remedy by appeal met when parties in danger of permanently losing substantial rights). Thus, the outcome of this original proceeding hinges on

---

**2.** HGL, Inc. built and sold a home to relators under a contract which included a "Home Buyers Warranty." The home warranty provided: "Should the Builder or Homebuyer(s) disagree with the Insurer's decision to deny the claim ..., the contesting party shall call for conciliation ... or an arbitration to be conducted by the American Arbitration Association...." *Freis*, 877 S.W.2d at 284. Asserting that the home shifted on its foundation, relators participated in mediation and then filed suit. *See id.*

whether the trial court clearly abused its discretion in ordering Glazer's to arbitrate its statutory claim.

## ISSUES

Glazer's contends the trial court clearly abused its discretion by ordering arbitration because: (1) the parties did not agree to arbitration; (2) the arbitration provision in section 102.77(b) of the Act violates Glazer's rights under the Texas Constitution; and (3) the Federal Arbitration Act preempts the Texas General Arbitration Act.

## CONTRACTUAL ARBITRATION

Heineken argues that the fourth paragraph of the parties' letter agreement addresses termination for cause, incorporated by reference the Texas Alcoholic Beverage Code, and thus showed Glazer's agreement to arbitrate. *See* distributorship agreement, *supra* note 1. Alternatively, Heineken argues that because the laws existing at the time a contract is made become a part of the contract, the arbitration provision of the Act became a part of the agreement.

Glazer's argues that the parties did not enter into any contractual agreement to arbitrate the matters concerning "good cause" or "value" and that the language in the letter agreement referring to the regulations and laws of Texas was a "choice of law" provision.

Arbitration is a streamlined decision-making process. The Texas General Arbitration Act permits only limited discovery. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.050, .051 (Vernon Supp.2001); *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 822 (Tex.App.—San Antonio 1996, no writ); *Transwestern Pipeline Co. v. Blackburn,* 831 S.W.2d 72, 78 (Tex. App.—Amarillo 1992, orig. proceeding). The arbitration act makes no provision for

interrogatories or admissions. The rules of evidence do not apply. *See* TEX.R. EVID. 101(b) (rules of evidence apply in court proceedings); *Castleman v. AFC Enters., Inc.,* 995 F.Supp. 649, 653–54 (N.D.Tex. 1997) (arbitration proceedings are not governed by formal rules of evidence). The arbitration act does not require that a record be made of the arbitration hearing, and the arbitrators are not required to set out their rationale for the arbitration award. The arbitration act permits limited judicial review of the structure of the proceeding but allows virtually no judicial review of the merits of the proceeding. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.088, .091 (Vernon Supp.2001) (vacating and modifying or correcting arbitration award); *Island on Lake Travis, Ltd. v. Hayman Co. Gen. Contractors, Inc.,* 834 S.W.2d 529, 533 (Tex.App.—Austin 1992) ("A mere mistake of fact or law alone is insufficient to set aside an arbitration award; only those errors of fact or law that result in a fraud or some great and manifest wrong and injustice warrant setting aside an arbitration award."), *writ granted w.r.m.,* 848 S.W.2d 84 (Tex.1993); *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) ("An arbitration award has the same effect as the judgment of a court of last resort, and a trial judge reviewing the award may not substitute his judgment for the arbiters' merely because he would have reached a different decision."); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.,* 927 S.W.2d 31, 33 (Tex.App.—Houston [1st Dist.] 1995, no writ) (same); *Monday v. Cox,* 881 S.W.2d 381, 384 (Tex. App.—San Antonio1994, writ denied) (Texas General Arbitration Act "permits courts to set aside arbitration awards only in limited circumstances").

■ These limitations on the rights of the parties in arbitration make it an inex-

pensive, rapid alternative to traditional litigation. *See Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995) (orig.proceeding) (per curiam); *Anglin,* 842 S.W.2d at 272–73. These benefits, however, are achieved only by sacrificing many of the procedural and constitutional protections afforded by the traditional litigation process. For these reasons, the Texas General Arbitration Act requires a party to agree to arbitration before it can be forced to resign its constitutional right to have its dispute determined in a court of competent jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001, .021, .088(a)(4) (Vernon Supp.2001); *see also Panhandle & S.F. Ry. Co. v. Curtis,* 245 S.W. 781, 783 (Tex.Civ.App.—Amarillo 1922, no writ) ("Where a party is to be deprived of his right to resort to the courts it should appear as a general rule, we think, that he has by agreement waived that right or consented that other instrumentalities shall be used to determine it."). A prior Texas constitutional provision expressly recognized the fact that arbitration had to be elected by the parties, not forced upon them. *See* TEX. CONST. art. XVI, § 13 ("It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, *when the parties shall elect* that method of trial." (emphasis added)) (repealed 1969).[3] Thus, although arbitration is encouraged, arbitration has long been recognized as a contractual matter and, in the absence of a contractual agreement to arbitrate, a party cannot be forced to forfeit the constitutional protections of the judicial system and submit its dispute to arbitration. *See Freis,* 877 S.W.2d at 284; *In re ACG Cotton Mktg., L.L.C.,* 985 S.W.2d 632, 633 (Tex.App.—Amarillo 1999, orig. proceeding).

As a general rule, in determining whether to compel contractual arbitration, the court must decide two issues: (1) whether a valid, enforceable agreement exists; and if so, (2) whether the claims asserted fall within the scope of the agreement. *See Dallas Cardiology Assocs., P.A. v. Mallick,* 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, pet. denied). Although an arbitration agreement does not have to assume any particular form, the language of the agreement must clearly indicate the intent to arbitrate. *See Massey v. Galvan,* 822 S.W.2d 309, 316 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Manes v. Dallas Baptist College,* 638 S.W.2d 143, 145 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

If the trial court determines that a valid agreement to arbitrate exists and that the claim raised falls within the scope of the agreement, the court must compel arbitration and stay its proceedings pending arbitration. *See Prudential Sec., Inc. v. Banales,* 860 S.W.2d 594, 597 (Tex. App.—Corpus Christi 1993, no writ); *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 929 (Tex.App.—Houston [1st Dist.] 1996, no writ).

Thus, the authorities construing the issue of whether the parties agreed to arbitration under the common law or under the Texas or Federal Arbitration Acts require that arbitration encompass a voluntary, contractual submission by the parties of a dispute for decision. The agreement must clearly demonstrate an intent to arbitrate.

Neither party has alleged that the contract is ambiguous. The interpretation of the contract, presumed to be un-

---

**3.** Article XVI, section 13 was repealed with the understanding that the repeal would make no substantive change to the meaning of the constitution. *See* Tex. H.R.J. Res. 3, 61st Leg., R.S., 1969 Tex. Gen. Laws 3230.

ambiguous, presents a question of law for the court. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Myers v. Gulf Coast Minerals Mgmt. Corp.,* 361 S.W.2d 193, 196 (Tex.1962). Its words must be accorded their plain, ordinary, and generally accepted meaning. *See W. Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 564, 261 S.W.2d 554, 557 (1953). The court will give effect to the intention of the parties as expressed therein, and "the instrument alone will be deemed to express the intention of the parties, for it is objective, not subjective, intent that governs." *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968) (citing *Woods v. Sims,* 154 Tex. 59, 64, 273 S.W.2d 617, 620 (1954)).

■ Under these circumstances, this Court is not at liberty to revise a contract under the guise of professing to interpret it or to make for the parties a contract different from the one they entered into. *See Stahl Petroleum Co. v. Phillips Petroleum Co.,* 550 S.W.2d 360, 368 (Tex.Civ. App.—Amarillo 1977) (op. on motion for rehearing), *aff'd,* 569 S.W.2d 480 (Tex. 1978); *Edwards v. Lone Star Gas Co.,* 769 S.W.2d 568, 571 (Tex.App.—Amarillo 1988), *rev'd on other grounds,* 782 S.W.2d 840 (Tex.1990).

■ In this case, the parties did not expressly agree in writing to submit the dispute to arbitration. The letter agreement does not mention "arbitration" in any form. The "termination" paragraph of the letter agreement, which is "subject to the applicable laws and regulations of the State of Texas," does not clearly demonstrate an intent to arbitrate. Under these circumstances, this Court may not expand upon the terms of the contract or tolerate a liberal interpretation of it by reading into it a voluntary, consensual agreement to arbitrate where one otherwise does not exist. *See Seale v. Roy M. Mitchell Con-*

*tracting Co.,* 321 S.W.2d 149, 151 (Tex.Civ. App.—Austin 1959, writ ref'd) ("no clear incorporation of the arbitration provisions of the principal contract into the subcontract between" the parties); *In re ACG Cotton Mktg., L.L.C.,* 985 S.W.2d at 633; *Escajeda v. Cigna Ins. Co.,* 934 S.W.2d 402, 407 (Tex.App.—Amarillo 1996, no writ) ("[B]efore a contract can be read as delegating to third-parties that power [as sole arbiters of reasonableness and necessity of all future medical expenses], the words evincing the delegation must be express, plain, clear, and certain.").

This Court, therefore, rejects Heineken's argument that Glazer's is contractually obligated to engage in binding arbitration and holds that the parties did not agree to arbitration under their written contract.

## ARBITRATION UNDER SECTION 102.77(b)

Under section 102.79 of the Act, a distributor may sue a manufacturer for violations of the Act, "if ... the matter is not to be submitted to arbitration." TEX. ALCO. BEV.CODE ANN. § 102.79(a) (Vernon 1995). Whether the matter is to be submitted to noncontractual arbitration is determined by section 102.77(b), which requires the issues of good cause and reasonable compensation be submitted to arbitration "at the option of either the manufacturer or distributor." *Id.* § 102.77(b). Section 102.77(b) contains no requirement that the distributorship agreement contain an arbitration provision for the trial court to send the issues to arbitration. Instead, section 102.77(b) permits either the distributor or manufacturer to demand arbitration of the issues of good cause and reasonable compensation, regardless of whether the distributorship agreement provides for arbitration.

### Constitutional Challenges

Glazer's contends that section 102.77(b)'s arbitration provision permitting one party to elect arbitration notwithstanding the objections of the other party unconstitutionally delegates judicial authority and violates its rights under the Texas Constitution to open courts and to a jury trial.[4]

When the constitutionality of a statutory provision is at issue, the appellate court must follow section 311.021 of the Texas Code Construction Act. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 1998); *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex.1990) (orig.proceeding); *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983). In following this provision, we presume that the legislature, in enacting a statute intended: (1) to comply with the state and federal constitutions, (2) for the entire statute to be effective, (3) a just and reasonable result, (4) for the result to be feasibly executed, and (5) to favor public interest over any private interest. *See* Tex. Gov't Code Ann. § 311.021 (Vernon 1995); *Blair v. Razis,* 926 S.W.2d 784, 787 (Tex.App.—Tyler 1996, no writ).

A strong presumption exists that a valid legislative enactment is constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.,* 922 S.W.2d 931, 934 (Tex. 1996); *Vinson v. Burgess,* 773 S.W.2d 263, 266 (Tex.1989). In analyzing a statute's constitutionality, we begin with a presumption that the statute is constitutional. *See Sax,* 648 S.W.2d at 664. We also presume

the legislature has not acted unreasonably or arbitrarily. *See id.* The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *See Tex. Pub. Bldg. Auth. v. Mattox,* 686 S.W.2d 924, 927 (Tex.1985). Where reasonable minds may differ, a difference of opinion does not provide a sufficient basis to strike down the statute's application as arbitrary or unreasonable.

### Open Courts Guarantee

Glazer's argues that the arbitration provision of section 102.77(b) is unconstitutional under the Texas Constitution's open courts guarantee because this provision unreasonably and arbitrarily restricts a cognizable common-law cause of action for breach of contract. Heineken responds that a claim that "good cause" did not exist for termination of the distributorship is not a well-recognized common-law cause of action but was created by the legislature.[5]

Article I, section 13 of the Texas Constitution provides, "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. This clause acts as an additional due process guarantee granted in the Texas Constitution. It prohibits legislative bodies from arbitrarily withdrawing all legal remedies from anyone having a well-defined cause of

---

4. Glazer's states in its brief that Heineken "implicitly conceded below that a unilateral right to compel arbitration is unconstitutional," citing page 86 of the clerk's record. That page contains an argument by Heineken that the statute is not unconstitutional in this case because the parties agreed to arbitration. Contrary to Glazer's representation, Heineken's argument that Glazer's constitutional concerns never arose is not a concession,

express or implied, that the statute is unconstitutional.

5. We do not construe Heineken's argument to be that breach of contract does not give rise to a common-law cause of action. *See Boon Ins. Agency, Inc. v. Am. Airlines, Inc.,* 17 S.W.3d 52, 57 (Tex.App.—Austin 2000, pet. denied), *cert. denied,* 531 U.S. 1113, 121 S.Ct. 858, 148 L.Ed.2d 772 (2001).

action under the common law. *See Diaz v. Westphal,* 941 S.W.2d 96, 101 (Tex.1997); *Sax,* 648 S.W.2d at 664; *Hanks v. City of Port Arthur,* 121 Tex. 202, 207–16, 48 S.W.2d 944, 946–50 (1932); *Stout v. Grand Prairie Indep. Sch. Dist.,* 733 S.W.2d 290, 293 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

■ This constitutional provision addresses access and redress and includes at least three separate guarantees: (1) courts must actually be operating and available; (2) the legislature cannot impede access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded, "so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex.1994) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993) (citing *Sax,* 648 S.W.2d at 661–62)). Appellant's challenge is directed at the third guarantee.

■ The purpose of the open courts guarantee is to ensure all citizens the right to bring well-established common-law causes of action and to ensure that government action will not unreasonably abridge that right. *See Criswell v. Ginsberg & Foreman,* 843 S.W.2d 304, 306 (Tex.App.—Dallas 1992, no writ); *Castillo v. Hidalgo Co. Water Dist.,* 771 S.W.2d 633, 636 (Tex.App.—Corpus Christi 1989, no writ). The provision does not create new rights but ensures that the courts shall be open and afford a remedy for causes of action recognized at common law. *See In re B.M.N.,* 570 S.W.2d 493, 498 (Tex.Civ.App.—Texarkana 1978, no writ).

The supreme court has established a two-part test for determining whether a statute violates the open courts guarantee: first, the statute must restrict a well-recognized common-law cause of action; and second, the restriction must constitute an unreasonable or arbitrary exercise of police power when balanced against the purpose and basis of the statute. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990); *Lucas v. United States,* 757 S.W.2d 687, 690 (Tex.1988); *Trinity River Auth.,* 889 S.W.2d at 262; *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 955 (1955); *Sax,* 648 S.W.2d at 665; *Waites v. Sondock,* 561 S.W.2d 772, 774 (Tex.1977); *David McDavid Nissan, Inc. v. Subaru of Am., Inc.,* 10 S.W.3d 56, 67 (Tex.App.—Dallas 1999, no pet.) (citing *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520–21 (Tex.1995)), *rev'd on other grounds,* 44 Tex. Sup.Ct. J. 779 (May 31, 2001). Thus, in order to establish an open courts violation in this context, Glazer's must show: (1) it has a well-recognized common-law cause of action that is being abrogated or restricted; and (2) the restriction is an unreasonable or arbitrary exercise of police power when balanced against the purpose and basis of the statute. *See Moreno,* 787 S.W.2d at 355; *Sax,* 648 S.W.2d at 665.

Section 102.77(b) addresses arbitration of two issues under the statutory cause of action provided in section 102.79 for termination of a distributorship without good cause. *See* TEX. ALCO. BEV.CODE ANN. § 102.77(b), 102.79 (Vernon 1995). The trial court's arbitration order refers to arbitration the issues of good cause for termination and reasonable compensation as they relate to "[Glazer's] claim that the Heineken Defendants violated section 102.74 of the Texas Alcoholic Beverage Code." The trial court's arbitration order does not refer Glazer's common-law causes of action to arbitration, and those causes

remain pending before the trial court.[6]

The cause of action created in sections 102.77 and 102.79 is essentially a breach of contract action. The sections provide a cause of action against "any manufacturer who, without good cause, cancels, terminates, or fails to renew any agreement." *Id.* § 102.77(a). This statutory cause of action is identical to Glazer's common-law breach of contract cause of action, which alleged that "Heineken and Amstel breached their respective contracts with Glazer's by, among other things, terminating those contracts without good cause."

The first question is whether Glazer's common-law breach of contract cause of action has been abrogated by the trial court's order compelling arbitration pursuant to section 102.77(b). Section 102.72(c) of the Act prohibits beer manufacturers and distributors from entering into any agreement purporting to vary the effect of the Act: "Any agreement purporting to do so is void and unenforceable to the extent of such variance only." *Id.* § 102.72(c). The clear intent of this provision is to abrogate a party's right to bring a common-law breach of contract cause of action on an agreement varying from the provisions of the Act.

As discussed above, Heineken and Glazer's did not contract in their agreement for arbitration of disputes concerning cause for termination of the agreement or the value of the distributorship of the terminated brands. Ordinarily, the lack of a written arbitration agreement prevents a court from ordering arbitration. However, such an application of the law to this agreement would prevent Heineken from demanding its statutory right to arbitration under section 102.77(b). Such a variance from the provisions of the Act is "void and unenforceable" under section 102.72(c). We must determine whether the effect of section 102.72(c) in this situation, essentially forcing Glazer's to arbitrate its breach of contract cause of action without having agreed to do so, constitutes an abrogation of Glazer's common-law breach of contract cause of action.[7]

Glazer's argues that the trial court, by sending to arbitration the issues of "whether or not good cause existed for cancellation of the distribution contracts," and "the amount of the reasonable compensation, if any, to be paid for the value of the Plaintiff's business," restricted the liability and damages issues of Glazer's common-law breach of contract cause of action to the determination of the arbitra-

**6.** Even though the trial court's order does not purport to affect Glazer's common-law breach of contract cause of action, Glazer's challenges to the constitutionality of section 102.77(b) based on its effect on Glazer's common-law cause of action are ripe for determination because, as shown below, the arbitration of the statutory cause of action will have a res judicata effect on Glazer's common-law breach of contract cause of action. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex.2000) (issue is ripe for determination if injury has occurred or is likely to occur; threat of harm must be direct and immediate rather than conjectural, hypothetical, or remote); *see also Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 579–82, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)

(issue of constitutionality of statutorily mandated arbitration under the Federal Insecticide, Fungicide, and Rodenticide Act was ripe for determination before parties submitted to arbitration).

**7.** Glazer's pleaded its breach of contract action as follows:

Heineken and Amstel breached their respective contracts with Glazer's by, among other things, terminating those contracts without good cause.

The breaches of contract by Heineken and Amstel have proximately caused actual damages, including consequential and incidental damages, to Glazer's, for which Glazer's hereby sues.

tors on these issues in Glazer's statutory cause of action.

■ To determine whether the trial court's order restricted Glazer's common-law breach of contract cause of action, we must determine whether entry of an arbitrators' award on good cause for termination and the value of the distributorship business in Glazer's statutory cause of action will preclude re-litigation of these issues in Glazer's common-law breach of contract cause of action. The doctrine of res judicata precludes re-litigation of claims that have been finally adjudicated. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). If res judicata applies in this case, it would bar re-litigation of Glazer's common-law breach of contract to the extent that it involves breach by termination without good cause and the same measure of damages as the statutory cause of action, *i.e.*, damages equal to the fair market value of the distributorship business of the terminated brands.[8]

■ Ordinarily, res judicata precludes re-litigation of a claim in a subsequent lawsuit resolved in a previous lawsuit. The arbitration provision in section 102.77(b), together with Texas General Arbitration Act and the trial court's order abating the common-law causes of action until completion of the arbitration process,

result in a *de facto* severance of Glazer's statutory cause of action from the remainder of the lawsuit. Under those provisions, Glazer's statutory cause of action will be decided by the arbitrators, and the trial court will, unless the arbitrators' award must be vacated or modified, enter a judgment or decree confirming the arbitrators' award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.092(a) (Vernon Supp. 2001). Either party can then bring an interlocutory appeal of the judgment or decree confirming the award. *See id.* § 171.098(a). The judgment or decree confirming the arbitrators' award operates as a final judgment from a court of last resort. *See Milliken v. Grigson*, 986 F.Supp. 426, 431 (S.D.Tex.1997), *aff'd*, 158 F.3d 583 (5th Cir.1998); *J.J. Gregory Gourmet Servs., Inc.*, 927 S.W.2d at 33; *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.—Houston [14th Dist.] 1995, no writ) (citing *Bailey & Williams*, 727 S.W.2d at 90). At that time, Glazer's statutory cause of action will effectively be final. Accordingly, notwithstanding the fact that both the statutory and common-law claims may be brought together, we conclude that the doctrine of res judicata can apply in this case to preclude re-litigation of the elements of Glazer's common-law breach of contract cause of action.

■ Texas courts apply the doctrine of res judicata to arbitration awards.

8. To the extent Glazer's common-law breach of contract action may assert damages other than the fair market value of the distributorship business relating to the terminated brands, collateral estoppel may preclude re-litigation of the issue of good cause for termination of the distributorship agreements. *See Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994); *J.J. Gregory Gourmet Servs., Inc.*, 927 S.W.2d at 34. The parties have not cited, and our research has not discovered, any published opinion from a Texas court applying the doctrine of collateral estoppel to

an arbitrators' award. Several courts that have applied the doctrine to an arbitrators' award have done so only when it is clear the arbitrators decided the same issue as appears in the subsequent litigation, and the arbitration proceeding provided a full and fair opportunity to litigate the issue. *See Witkowski v. Welch*, 173 F.3d 192, 200, 203, 206 (3d Cir.1999); *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991). However, that issue is not before us, and we make no holding on it.

See *Drago Daic, Trustee v. Nauru Phosphate Royalties (Tex.), Inc.,* 27 S.W.3d 695, 702 (Tex.App.—Beaumont 2000, pet. denied). To establish res judicata, the claimant must show: (1) there was a prior final judgment on the merits rendered by a court of competent jurisdiction; (2) the parties, or those in privity with them, are identical in both suits; and (3) the same cause of action is involved in both suits. *See Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 518 (Tex.1984); *J.J. Gregory Gourmet Servs., Inc.,* 927 S.W.2d at 34; *Tippit v. Tippit,* 865 S.W.2d 624, 626 (Tex.App.—Waco 1993, no writ). Applying these elements to this case, the record shows: (1) the arbitrators' award, when reduced to a judgment, operates as a final judgment from a court of last resort; (2) the parties are identical under both the arbitrated statutory cause of action and the common-law breach of contract cause of action; and (3) Glazer's statutory and common-law breach of contract causes of action are identical as each is based upon essentially the same liability and damage issues. Thus, res judicata will bar re-litigation of Glazer's breach of contract cause of action on the liability issue and the damage issue to the extent the common-law cause of action asserts as damages the fair market value of the distributorship business from the terminated brands. *See Goldberg v. R.J. Longo Constr. Co.,* 54 F.3d 243, 246 (5th Cir. 1995); *Universal Am. Barge Corp. v. J-Chem, Inc.,* 946 F.2d 1131, 1136–38 (5th Cir.1991).

Accordingly, we conclude the doctrine of res judicata applies to preclude litigation of liability under Glazer's common-law breach of contract action, and it precludes litigation of the damages issue of Glazer's common-law breach of contract cause of action to the extent it asserts the same damages as the statutory cause of action.

Thus, by creating a statutory breach of contract cause and by expressly prohibiting the parties from entering into any agreement which could vary the effect of the Act, the legislature eliminated common-law breach of contract causes of action for breach of distributorship agreements and replaced them with the statutory cause of action found in sections 102.77 and 102.79 of the Act.

Having discerned that the Act abrogates Glazer's right to bring a common-law breach of contract cause of action, we must determine whether such abrogation constitutes a reasonable exercise of the State's police power in the interest of the general welfare. The State's exercise of police power "is limited to enactments having reference to the public health, comfort, safety and welfare. It must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained." TEX. CONST. art. I, § 19 interp. commentary (Vernon 1997); *see Deep E. Tex. Reg'l Mental Health & Mental Retardation Servs. v. Kinnear,* 877 S.W.2d 550, 560 (Tex.App.—Beaumont 1994, no writ) (quoting the interpretive commentary).

■ The Texas Alcoholic Beverage Code "is an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the state," and "[i]t shall be liberally construed to accomplish this purpose." TEX. ALCO. BEV.CODE ANN. § 1.03 (Vernon 1995). The purpose of the Beer Industry Fair Dealing Law is:

> to promote the public's interest in the fair, efficient and competitive distribution of beer within this State by requiring manufacturers and distributors to conduct their business relations so as to assure:

(1) that the beer distributor is free to manage its business enterprise, including the right to independently establish its selling prices; and

(2) that the public, retailers, and manufacturers are served by distributors who will devote their reasonable efforts and resources to the sales and distribution of all the manufacturer's products which the distributor has the right to sell and distribute and maintain satisfactory sales levels in the sales territory assigned the distributor.

*Id.* § 102.72(a). These purposes clearly invoke the public interest, which brings the regulation of the distribution of beer and the relations between manufacturers and distributors squarely within the State's police power. *See Linick v. Employers Mut. Cas. Co.*, 822 S.W.2d 297, 299 (Tex.App.—San Antonio 1991, no writ). "Where the public interest is involved, individuals' rights often yield to overriding public interests and are often regulated under the police power of the State." *Id.* at 300.

The abrogation of the common-law breach of contract cause of action and its replacement with the statutory cause of action is not an abuse of police power in this case because it provides the identical relief sought by Glazer's in its common-law breach of contract cause of action. Accordingly, the remaining issue is whether the statutory arbitration provision is a reasonable exercise of police power.

The arbitration provision of section 102.77(b) furthers the purposes of the Tex-

as Alcoholic Beverage Code and the Act by providing for a speedy and relatively inexpensive resolution of disputes concerning termination of a distributorship. This provision protects both the distributor and the manufacturer from the costs of traditional litigation. By providing a prompt resolution of disputes surrounding termination of a distributorship, it protects the retailers and the public from any unnecessary disruption in distribution caused by protracted litigation between the distributor and manufacturer.

We conclude the arbitration provision of section 102.77(b), as applied in this case, "ha[s] a real and substantial relation to the object sought to be attained" by the Texas Alcoholic Beverage Code and the Act and is a reasonable exercise of the State's police power. Accordingly, we hold the trial court's order compelling arbitration of the issues of good cause for termination of the distributorship contracts and the reasonable compensation for the value of Glazer's business does not violate Glazer's rights under the Texas Constitution's open courts guarantee.

### Delegation of Judicial Authority

 Glazer's argues that section 102.77(b)'s arbitration provision impermissibly delegates the judicial power of the state in violation of article five, section one of the Texas Constitution. *See* TEX. CONST. art. V, § 1.[9] The Texas Constitution vests the judicial power in the Texas Supreme Court, the court of criminal appeals, courts of appeals, commissioners courts, justice

---

9. Article five, section one provides:
 The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

 The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.
 TEX. CONST. art. V, § 1.

courts, and in "such other courts as may be provided by law." *Id.* The "judicial power" of the trial courts consists of the authority to hear facts, decide issues of fact, decide questions of law, enter judgment in accordance with the facts and the law, and enforce those judgments once entered. *See Holmes v. Morales,* 924 S.W.2d 920, 923 (Tex.1996) (" 'Judicial power,' embraces powers to hear facts, to decide issues of fact made by pleadings, to decide questions of law involved, to render and enter judgment on facts in accordance with law as determined by the court, and to execute judgment or sentence."); *Morrow v. Corbin,* 122 Tex. 553, 560–61, 62 S.W.2d 641, 645 (1933); *Tabor v. Hogan,* 955 S.W.2d 894, 896 (Tex.App.—Amarillo 1997, no pet.); *Holmes v. Morales,* 906 S.W.2d 570, 574 n. 4 (Tex.App.—Austin 1995) ( "The 'judicial power' is the power to award legal remedies that are traditional in courts of justice, in controversies between disputing parties who are properly before the court, based ordinarily upon past or present facts and according to rights, duties, and liabilities laid down in preexisting rules of constitutional, statutory, or common law."), *rev'd on other grounds,* 924 S.W.2d 920 (Tex.1996); *Beyer v. Employees Ret. Sys.,* 808 S.W.2d 622, 627 (Tex.App.—Austin 1991, writ denied) (judicial power contrasted with agency adjudications). This power is non-delegable. *See Tabor,* 955 S.W.2d at 896. The issue we must decide is whether the arbitration provision of section 102.77(b) constitutes an unconstitutional delegation of judicial authority.

The Austin Court of Appeals has reviewed the constitutionality of a statutory mandatory arbitration provision similar to that in section 102.77(b). In *Hays County Appraisal District v. Mayo Kirby Springs, Inc.,* 903 S.W.2d 394 (Tex.App.—Austin 1995, no writ), a taxpayer sought judicial review of the valuation of its property by the Appraisal District under chapter 42 of the Texas Tax Code. *See id.* at 396. The taxpayer moved the trial court to send the case to "arbitration" pursuant to section 42.225 of the tax code. *See id.* That section required the trial court, at the request of the taxpayer, to "order the parties to submit to arbitration and shall appoint an impartial third party to conduct the arbitration. The impartial third party is appointed by the court and serves as provided by Subchapter C, Chapter 154, Civil Practice and Remedies Code." *See* Act of May 22, 1991, 72d Leg., R.S., ch. 412, § 1, 1991 Tex. Gen. Laws 1576, 1576–77, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 1031, § 9, 1993 Tex. Gen. Laws 4440, 4441–42 (current version codified at TEX. TAX CODE ANN. § 42.225 (Vernon Supp.2001)). The taxpayer could demand that the arbitration be binding. *See id.*

Chapter 154 of the Texas Civil Practice and Remedies Code is not the Texas General Arbitration Act but is the chapter concerning alternative methods of dispute resolution, including mediation, mini-trial, moderated settlement conference, summary jury trial, and arbitration. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 154.001–.073 (Vernon 1997 & Supp. 2001). All of these alternative methods of dispute resolution under chapter 154, including arbitration, are nonbinding unless the parties agree in advance that they shall be binding. *See id.* §§ 154.023–.027. Subchapter C of chapter 154 concerns the use of an impartial third party to preside over one of the methods of dispute resolution in sections 154.023–.027. *See id.* §§ 154.051–.055. "Unless the parties agree otherwise, *all matters* " involved in alternative dispute resolution, including arbitration, conducted by an impartial third party "are confidential and may *never* be disclosed to anyone, *including* the appointing court." *Id.* § 154.053(c) (emphasis added).

Thus, section 42.225 permitted a taxpayer to force the appraisal district into binding arbitration under a procedure intended to be nonbinding, and the arbitration proceeding had to be kept completely secret, even from the court ordering the arbitration.

Pursuant to section 42.225 of the tax code, the trial court in *Hays County* appointed an impartial third party to conduct the arbitration, and the impartial third party reduced the assessed value of the taxpayer's property by seventy-eight percent and assessed $15,000 in attorney's fees against the Appraisal District. *See Hays County*, 903 S.W.2d at 396. The trial court entered judgment on the impartial third party's recommendation. The Appraisal District appealed to the Austin Court of Appeals, asserting that section 42.225 of the tax code violated various Texas constitutional provisions by impermissibly delegating judicial authority and by violating the open courts guarantee and the right to a jury trial. *See id.* at 397. The Austin Court of Appeals determined the statutorily mandated arbitration in that case violated article five, section one of the Texas Constitution because it impermissibly delegated judicial power to a person outside the judicial system, thereby "unilaterally deny[ing] the reviewing court any meaningful method of ascertaining the lawfulness of the arbitration award the court is expected to enforce by its judicial power." *Id.*

Likewise, in this case, section 102.77(b)'s arbitration provision requires the trial court, at the option of either party and without a contractual agreement, to delegate to nonjudicial entities its nondelegable authority and duty to determine the judicial issues in the case. The statute delegates the judicial power to persons outside the judicial system without providing "any meaningful method of ascertaining the lawfulness of the arbitration award the court is expected to enforce by its judicial power." *Id.; see also* discussion of arbitration *supra*, pp. 295–96. Such a requirement violates article five, section one of the Texas Constitution.[10] *See In re Webster*, 982 S.W.2d 526, 528 (Tex.App.—Amarillo 1998, no pet.) (trial court violated article five, section one by delegating to the Department of Protective and Regulatory Services its discretionary authority to determine grandmother's access to child); *Tabor*, 955 S.W.2d at 896 (trial court violated article five, section one by delegating to county commissioners determination of a road's legal location).

Accordingly, we hold section 102.77(b)'s arbitration provision, as applied to the parties in this case, violates article five, section one of the Texas Constitution.

### Jury Trial

■■■ Glazer's also argues that section 102.77(b)'s arbitration provision deprives it of its right to a jury trial under article one, section fifteen and article five, section ten of the Texas Constitution. *See* TEX. CONST. art. I, § 15; art. V, § 10.[11] A litigant perfects its right to a jury trial by demanding a jury trial and paying the

---

10. We recognize that "[t]he Legislature, by proper grant, may delegate the exercise of police power to administrative agencies." *Linick*, 822 S.W.2d at 300. However, in the arbitration provision of section 102.77(b), the legislature did not delegate the police power to administrative agencies—it distributed it to arbitration panels, which are neither courts nor administrative agencies. *Cf. N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458

U.S. 50, 68–72, 87, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (Congress could not require private parties to litigate breach of contract action in non-Article III bankruptcy court).

11. Article one, section fifteen provides:

The right of trial by jury shall remain inviolate. The Legislature shall pass such laws

appropriate fee. The right, however, is not self executing. *See Mercedes–Benz Credit Corp.*, 925 S.W.2d at 666; *Citizens State Bank v. Caney Inv.*, 746 S.W.2d 477, 478 (Tex.1988); *Sunwest Reliance Acquisitions Group v. Provident Nat'l Assur. Co.*, 875 S.W.2d 385, 387 (Tex.App.—Dallas 1993, no writ); *see also* TEX.R. CIV. P. 216.

In this case, the record does not show that either Glazer's or any other party has both requested a jury *and* paid the fee. Miller, in its answer, "demand[ed] strict proof [of Glazer's allegations] before a jury," but it did not pay the jury fee. Because Miller did not pay the jury fee, Glazer's cannot rely on Miller's jury demand to invoke its right to a jury. *See* TEX.R. CIV. P. 220; *Mercedes Benz Credit Corp.*, 925 S.W.2d at 666. At oral argument before this Court, the parties admitted that a jury had not been requested and

that the jury fee had not been paid. Until Glazer's or another party both demands a jury and pays the necessary fee, Glazer's has not properly asserted its right to a jury trial; therefore, the trial court's actions could not have deprived it of any such right. *See Sunwest Reliance Acquisitions Group, Inc.*, 875 S.W.2d at 387 ("[A] party is required to act affirmatively in order to preserve the right to complain on appeal that it was denied its perfected right to a trial by jury."). Glazer's arguments that section 102.77(b)'s arbitration provision conflicts with its right to a jury trial under the Texas Constitution lack merit.[12]

## FEDERAL ARBITRATION ACT PREEMPTION

Glazer's argues that the Federal Arbitration Act preempts the Texas Gen-

as may be needed to regulate the same, and to maintain its purity and efficiency. Provided, that the Legislature may provide for the temporary commitment, for observation and/or treatment, of mentally ill persons not charged with a criminal offense, for a period of time not to exceed ninety (90) days, by order of the County Court without the necessity of a trial by jury.

TEX. CONST. art. I, § 15

Article five, section ten provides:

In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; but no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature.

TEX. CONST. art. V, § 10.

12. In addition, article I, section 15 grants to the legislature authority to regulate the right to a jury trial. This constitutional provision permits the legislature to regulate the right to a jury trial in a case where no right existed by statute or at common law at the time the constitution was adopted in 1876. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 636 (Tex.1996);

*Adams v. Tex. State Bd. of Chiropractic Exam'rs*, 744 S.W.2d 648 (Tex.App.—Austin 1988, no writ); *Granger v. Folk*, 931 S.W.2d 390, 393 (Tex.App.—Beaumont 1996, no writ). The Texas Alcoholic Beverage Code was not in effect at the time the 1876 Constitution was adopted. *State v. Credit Bureau*, 530 S.W.2d 288, 291 (Tex.1975); *EnRE Corp. v. Railroad Comm'n*, 852 S.W.2d 661, 664 (Tex.App.—Austin 1993, no writ). Thus, no right to a jury trial under article I, section 15 attaches to Glazer's statutory cause of action. In postsubmission briefing, Glazer's cited *GTFM, LLC v. TKN Sales, Inc.*, No. 00CIV0235BSJ, 2000 WL 364871 (S.D.N.Y. Apr.10, 2000), which found the Minnesota Sales Representative Act violated the parties' Seventh Amendment right to a jury trial. In that case, the statute required the manufacturer to pursue binding arbitration of its claims and permitted the sales representative to pursue binding arbitration. The court held the requirement that the manufacturer's claims be decided solely by binding arbitration violated the parties' Seventh Amendment right to a jury trial. That case does not apply here for two reasons: (1) Glazer's has not invoked any right to a jury trial; and (2) Glazer's has not asserted that section 102.77(b)'s arbitration provision violates its rights under the Seventh Amendment.

eral Arbitration Act and section 102.77(b). Glazer's did not assert federal preemption before the trial court. Glazer's only statement mentioning the Federal Arbitration Act in its response to Heineken's motion to compel arbitration was, "[T]he Federal Arbitration Act, which would govern this contract, specifically requires a written contract." This sentence does not assert federal preemption. Accordingly, Glazer's has not preserved any error for our review. *See* TEX.R.APP. P. 33.1; *In re El Paso Healthcare Sys.*, 969 S.W.2d at 75.

■■■■ However, even if Glazer's did assert federal preemption, the argument that the Federal Arbitration Act preempts the Texas statutory provisions at issue in this case lacks merit. The primary purpose of the Federal Arbitration Act is to require courts to order arbitration when the parties have contracted to arbitrate their differences, even in the face of legislative efforts to restrict the enforceability of arbitration agreements. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Batton v. Green*, 801 S.W.2d 923, 927 (Tex.App.—Dallas 1990, no writ) ("The Act was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate."). By its own terms, the Federal Arbitration Act applies only in cases where the parties have agreed to arbitration. *See* 9 U.S.C.A. § 2 (West 1999) (Federal Arbitration Act applies to contracts evidencing interstate commerce containing an agreement to arbitrate); *Commercial Metals Co. v. Balfour, Guthrie, & Co.*, 577 F.2d 264, 266 (5th Cir.1978). In this case, no agreement to arbitrate exists; therefore, the Federal Arbitration Act does not and cannot apply. Glazer's cites no case holding the Federal Arbitration Act preempts state laws *permitting* arbitration. Finally, the Federal Arbitration Act does not totally preempt

state arbitration laws. *See Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *City of Lubbock*, 940 S.W.2d at 126. We conclude Glazer's has failed to show the Federal Arbitration Act preempts the arbitration provision under section 102.77(b) of the Act, and that the Federal Arbitration Act would prohibit the arbitration in this case.

## CONCLUSION

Because the arbitration provision of section 102.77(b), as applied in this case, violates article five, section one of the Texas Constitution, we hold Glazer's has shown the trial court clearly abused its discretion in entering the order compelling arbitration. We conditionally grant Glazer's petition for writ of mandamus and order the trial court to vacate its order granting Heineken's motion to compel arbitration.

MOSELEY, J., concurring and dissenting.

MOSELEY, Justice, concurring and dissenting.

Texas law does not authorize an interlocutory appeal of an order compelling arbitration. *See Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc.*, 944 S.W.2d 68, 70 (Tex.App.—Dallas 1997, no writ). For this reason, I agree with the majority's disposition of the interlocutory appeal. For the following reasons, however, I respectfully dissent from the majority's disposition of the mandamus proceeding, the scope of its opinion, and its analysis of Glazer's "open courts" and right to jury trial arguments.

### Delegation of Judicial Authority

By statute, if a manufacturer terminates a beer distribution agreement without good cause, it is liable to the distributor for the fair market value of the distributor's business relating to the affected brand(s). TEX. ALCO. BEV.CODE ANN.

§ 102.77(a) (Vernon 1995). If a dispute arises as to whether a manufacturer had "good cause" to terminate the contract, or the amount of reasonable compensation, it may be submitted to arbitration "at the option of either the distributor or manufacturer[.]" *Id.* at § 102.77(b). By enacting section 102.77 the legislature created a statutory scheme of rights and obligations for beer manufacturers and distributors, different from and in addition to common-law rights and obligations.

Glazer complains of the trial court's order compelling it to arbitrate its statutory claim. It contests whether the State may, absent agreement, statutorily compel it to arbitration. The majority agrees with Glazer, concluding that section 102.77(b) attempts to delegate judicial authority in violation of article five, section one of the Texas Constitution.[1] However, the legislature may, without acting in derogation of the Constitution, specify non-judicial means and procedures to vindicate *legislatively-created* rights and obligations. Accordingly, I would overrule Glazer's contention that section 102.77(b) constitutes an improper delegation of judicial authority.

### The Scope of the Majority's Opinion

I further disagree with the scope of the majority's opinion. Having found section 102.77(b) constitutes an unconstitutional delegation of judicial authority, the majority unnecessarily and improvidently reaches Glazer's arguments that the statute violates its constitutional rights to "open courts" and to a jury trial. Because I

would reject Glazer's argument that section 102.77(b) is an unconstitutional delegation of judicial authority, I would reach Glazer's remaining arguments and decide them against Glazer's. However, as set forth herein, I disagree from the majority's analysis of those issues.

### "Open Courts"

The "open courts" provision restricts the legislature's ability to abrogate common-law causes of action. *See* TEX. CONST. art. I, § 13 ("open courts" provision); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990). Glazer's *common-law* claims remain pending below; thus, the trial court's order requiring arbitration of Glazer's *statutory* claims does not implicate the "open courts" provision.

Notwithstanding, the majority holds that "Glazer's challenges to the constitutionality of section 102.77(b) based on its effect on Glazer's common-law cause of action are ripe ... [because] arbitration of the statutory cause of action will have a res judicata effect on Glazer's common-law breach of contract cause of action." 95 S.W.3d at 300 n. 6. To this end, the majority summarily assumes Glazer's common-law and section 102.77 (and section 102.79) claims are identical, and on that basis asserts that Glazer's common-law claims are implicated by a hypothetical application of the doctrine of res judicata, based on events that have not, and may never, occur.

The majority next looks to section 102.72(c), which provides that any agree-

---

1. That section provides:
 The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

 The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.
 TEX. CONST. art. V, § 1.

ment purporting to vary the effect of the Act "is void and unenforceable to the extent of such variance." The majority then summarily concludes "[t]he clear intent of this provision is to abrogate a party's right to bring a common-law breach of contract cause of action on an agreement varying from the provisions of the Act." *Id.* at 300. To be sure, courts can detect a clear legislative intent to abrogate a common-law cause of action based on either the express terms or the necessary implications of a statute. *See Bruce v. Jim Walters Homes, Inc.,* 943 S.W.2d 121, 122–23 (Tex.App.— San Antonio 1997, writ denied). However, I am persuaded neither the express terms nor the necessary implications of section 102.72(c) divulges such an intent.[2] Thus, I would overrule Glazer's "open courts" issues.

### Right to a Jury Trial

The Texas Constitution protects the right to a jury trial in all actions for which that right existed at the time the constitution was adopted. *See* TEX. CONST. art. I, § 15, art. V, § 10; *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288, 291 (Tex. 1975). Section 102.77 creates a statutory cause of action, which did not exist previously, in addition to any common-law claims Glazer's may have. Therefore, I would hold the constitutional right to a jury trial does not apply to Glazer's statutory claim, and overrule Glazer's issue.

---

**2.** The majority actually holds that the legislature "eliminated common-law breach of contract causes of action for breach of distributorship agreements...." 95 S.W.3d at 302. This holding is too broad and is not supported by the majority's analysis, which at most bears only a holding that the legislature intended to abrogate common-law breach of contract claims arising from the termination of a beer distribution agreement without good cause.